In the Matter of Merle Ernest **BAILEY**, Bankrupt.

No. B–343–L.

United States District Court
D. Nebraska.
Feb. 17, 1959.

Paul Galter, Wagener, Marx & Galter, Lincoln, Neb., for bankrupt.

Emory P. Burnett, trustee, Lincoln, Neb., pro se.

VAN PELT, District Judge.

This matter is before the Court on a petition to review the Referee's order denying a claim that certain property is exempt.

Petitioner in Schedule B–5 claimed as exempt under Section 25–1556, R.R.S. 1943, "truck and tools and equipment used in painting business". The trustee's report of exempt property denied the claimed exemption of the truck.

The question is whether the Bankrupt's panel truck falls within the following exemption contained in Section 25–1556 (R.R.S.1943):

"No property hereinafter mentioned shall be liable to attachment, execution or sale on any final process issued from any court in this state, against any person being a resident of this state and the head of a family: * * * (8) the tools and instruments of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business: * * *"

The bankrupt is clearly a resident and the head of a family. He uses the panel truck to carry paint, tarps, ladders, brushes, etc. to the jobs which he has obtained as a small painting contractor. Certain portions of the truck have been especially adapted for this use. The Court is in agreement with the findings of fact made by the Referee as follows:

"Findings of Fact.

"The bankrupt is the head of a family and is a resident of Lincoln, Lancaster County, Nebraska. At the time of the institution of this bankruptcy proceeding on April 12, 1958, and for several years prior thereto the bankrupt was engaged in the work of painting various structures; mostly homes. He describes himself as a painting contractor. Approximately 90% of his work was done as a small individual painting contractor. Al-

most entirely this was in painting new homes recently constructed. He would contact the contractor or builder and after checking the work to be done he would tender an oral lump sum bid for the job, whether it be painting one or two or several houses. He would then do most of the work himself. On rather rare occasions when he found he had a little more than he could do he would employ a journeyman painter for a time on an hourly wage rate. Now and then on rare occasions he would work as a journeyman painter at an hourly wage for some other contractor, but this was mostly incidental.

"Since much of his work was the painting of newly constructed homes in new additions and not yet occupied he found it necessary to transport his equipment, that is, his paint, brushes, rollers, drop cloths and ladders from the job to his home each evening and from his home to the job each morning. In 1955 he purchased and remodeled the 1951 International panel truck here involved to serve this transportation purpose.

"The value of the truck is not of serious importance here and is not definitely established. He paid $295.00 for it some three years ago. A fair valuation at this time would appear to be approximately $200.00. He thereupon removed the righthand seat, installed overload springs on the rear axle and constructed two shelves on the inside of each side of the truck, all running lengthwise and being approximately eight or nine inches wide. As thus equipped the bankrupt was enabled to load cans of paint and other small items on these shelves and drop cloths and ten foot ladders in the body of the truck and still close the rear door. Ladders fourteen and possibly sixteen feet in length and used together to make an extension ladder some twenty eight or thirty feet high could likewise be hauled in this truck by separating the two parts of the extension ladder and leaving the ends of the ladders extending out the rear of the truck with the rear doors left open.

"For all practical purposes I think it may be said that the truck was used exclusively by the bankrupt for the purpose of transporting these items of painting supplies and equipment between his home and the job and from job to job. On rare occasions he might take his son with him and drop the son off at school on the bankrupt's way to work and use the truck for other family purposes on rare occasions. Either the bankrupt or some other member of the family from time to time owned a pleasure type automobile which took care of the general family purpose needs.

"The painter employed as a journeyman painter does not furnish any tools or equipment. The brushes, rollers, drop cloths and ladders are furnished by the painting contractor. The paint itself is furnished by the painting contractor if so provided in his contract.

"The bankrupt is the owner of his home and his equity in that home has been set off by the Trustee as exempt under the provisions of Section 40–101 of the Revised Statutes of Nebraska for the year 1943 as amended."

In his conclusions of law, the referee concludes that the truck was not within the exemption set out above. The bankrupt contends that the truck is within the words: "tools and instruments of any * * * person, used and kept for the purpose of carrying on his trade or business."

The point here at issue has never been decided by the Nebraska Supreme Court.

In the annotations to the Nebraska statute, the Reviser of Statutes, an able and experienced Nebraska lawyer, has set forth the following: "Exemption of truck as tool for carrying on business allowed in bankruptcy court. In re Burden, [D.C.] 83 F.Supp. 416." The referee, in analyzing that case concludes that the case is not a square holding to that effect because the exemption was claimed not only under the statute above cited, but also under § 25–1552 which exempts $500 in personal property when the debtor has no homestead.

The original bankruptcy petition of Burden claimed in Schedule B–5 as exempt under the state laws, certain

listed property including a "1939 1½ Ton Chevrolet Truck." There were cited both Sections 25–1552 and 25–1556 as well as Sections 25–1553 and 25–1554, and also because of the claim that an insurance policy was exempt, Section 44–371. In the application to release the truck from the execution which had been levied, all four sections, to wit, 25–1552, 25–1553, 25–1554 and 25–1556 were set forth as the basis for the application. The report of the referee found in paragraph 10 that the trustee filed his report of exempt property and set the truck off to the bankrupt as his exempt property under the laws of the State of Nebraska, and the provisions of the bankruptcy act and that no exceptions were taken to the report. The bankruptcy court entered an order approving the trustee's report of exemptions and the truck was set off as exempt and no exceptions were taken. In the hearing before the referee it was contended that the bankrupt claimed the truck as exempt under the laws of the State of Nebraska. It appears that it was argued that it was exempt both under the specific exemption statute, namely, as a tool of trade and under the $500 monetary exemption statute in lieu of a homestead. The referee in bankruptcy found the property to be exempt without specifying the section of the statute relied on. The court in review found that when levied upon, the truck had a value greater than $500 but due to an accident it was at the time of the hearing worth less than $500. The court affirmed the referee's order. It was thus unnecessary to specifically determine whether the truck was exempt as a tool of trade or under the in lieu of homestead exemption. It is true that there is language in the opinion indicative that the truck did come under the exemption as a tool of trade but there is also an express determination that the truck was valued at less than $500.

The Court agrees with the referee that the case does not squarely dispose of the question now before the Court.

■ A much stronger case for the bankrupt's position is that of In re Conley, D.C.Neb.1907, 162 F. 806, 808. In that case the bankrupt was a poultry dealer, and he used a horse and dray to pick up produce from the surrounding farms and bring it to his place of business. In order to conduct this business, the bankrupt had to have a means of conveyance, and the court held exempt: "one horse, one dray wagon, one set of single dray harness, one horse blanket, [and] one fly net * * *." It is evident that if the Court is to hold that this truck is not exempt under the above statute, the Conley case will have to be overruled. While motor trucks may not have been in contemplation when the original statute was drawn, it is axiomatic that exemption statutes are given a liberal construction, and the Court should not restrict the "tools and instruments" to those which were in general use when the statute was drawn.

■ The referee in this case has laid particular stress on the fact that the bankrupt was more like a businessman than a tradesman. The Court fails to appreciate the distinction, as the statute specificially refers to tools or instruments for carrying on a trade or "business". As was stated in the Conley case, supra [162 F. 806]:

> "The evident provision of this section of the statute was to afford protection, not only to mechanics and miners, but also to other heads of families engaged in *business,* as distinguished from those who follow a trade as an occupation, by exempting the tools and instruments reasonably necessary to carry on such business." (Emphasis supplied.)

Subsection (8) quoted above has not been altered since the decision was handed down over fifty years ago.

The referee points out that a businessman may have many thousands of dollars worth of equipment, all of which is necessary for the operation of his business. He mentions grocery equipment and over-the-road tractor trailers. The Court also takes note that the new type of garbage trucks used in this City are reputed to have a value in excess of

$14,000. It is not at all inconceivable that a garbage collector might go bankrupt and claim his vehicle as a necessary tool or instrument of his trade or business. In the Conley case, the bankrupt was allowed to retain necessary items of office furniture and egg processing equipment as part of the "tools or instruments" of his business. The Court construed the statute so that only those tools and instruments considered "necessary" were exempted, and duplicate items were held not exempt.

The Court agrees that to allow this exemption will open the door to rather large claims of exempt business property. This seems somewhat anomalous in a state which restricts the homestead exemption to $2,000. Neb.Rev.Stat. § 40–101 (Supp.1957). But this is a legislative determination, and not one for the court. Section 25–1556, which is applicable here, lists several classes of exempt property. Some have a dollar limitation and some do not. Tools and instruments of the trade or business fall into the latter class. Another class of property without a dollar limitation includes all pigs under six months old, and it has been held that one hundred fifty such pigs having a value of $2,250 were exempt under the Nebraska statute. Clay Center State Bank v. McKelvie, 8 Cir., 1927, 19 F.2d 308. Presumably a modern pig hatchery with thousands of such animals would retain them totally exempt.

The Court does not intend to examine all the decisions in other states, but there are two recent decisions in point. In the case of Matter of Pioch, 3 Cir., 1956, 235 F.2d 903, 908, the court referring to a salesman's car, said: "The car in the bankrupt's case was in every sense the 'tool of his trade' and it has never been required of a bankrupt that he surrender his tools to benefit his creditors." The statute in In re Trotter, D.C.La.1951, 97 F.Supp. 249, 250 provided: "The sheriff or constable can not seize * * * the tools and instruments and books and sewing machines, necessary for the exercise of his or her calling, trade or profession by which he or she

makes a living * * *." Under this statute it was held that a sales manager who traveled an area of a number of cities in Louisiana, Texas, and Arkansas was entitled to hold his car exempt. Referring to Louisiana decisions the Court stated at page 250:

"The same court, in Strozier v. Long, [La.App.] 40 So.2d 254, 255, held an automobile used by a small scale operator in the logging business was exempt under this article of the Code of Practice, because it was indispensable to the carrying on of his trade or business, using the following language: 'A logging operator in this day and time without the use of an automobile would be about as effective as a cowboy, on foot, attempting to round up range cattle.'"

It seems to the Court that this reasoning is applicable to the case at bar. From the evidence, and the referee's findings of fact, the Court is convinced that this small painting contractor, without some vehicle for transporting his tarps, ladders, paints, etc. would be about as effective as the cowboy referred to above. This is especially true since a lot of the bankrupt's work is on residential property in suburban neighborhoods. The cases above concerning salesmen only involve a means of necessary transportation of the person, and since the bankrupt in this case needs the truck to carry his paint, ladders and other tools, this case is even stronger than the above cases.

The Court is aware that articles of substantial value might be deemed necessary tools or instruments of a business. But Judge Munger's decision in the Conley case has been on the books for over half a century, and the Nebraska statute remains unchanged. The Court finds nothing to indicate that the legislature meant to restrict the exemption to simple hand tools, especially since no dollar limitation was put on this provision. Since the Conley decision so squarely held that a means of conveyance and other business equipment were within the exemption, and the legislature has

not made any amendment in fifty years to indicate that this decision was not consonant with the legislative intent, this construction seems to be the reasonable one. The Burden case, which at least indicated that the exemption of a truck was a possible holding under the statute, has now been on the books about a decade, and during much of this time has been cited by the statute reviser as above set forth, thus calling the holding to the attention both of the bar and the legislature. It too has brought no amendment.

It is the opinion of the Court, under the facts of this case, that the bankrupt's truck was a tool or instrument kept for the purpose of carrying on his trade or business. The Referee considered this a question of law rather than one of fact, and the Court agrees.

An appropriate order will this day be entered.

I am authorized to state that Chief Judge Richard E. Robinson and Senior Judge John W. Delehant concur in the findings and conclusions reached.