**In re Donald DUBROCK, Debtor.**

**CREDITHRIFT OF AMERICA, INC., Plaintiff,**

v.

**Donald DUBROCK, Defendant.**

**Bankruptcy No. 3–79–02387.
Adv. No. 3800070.**

United States Bankruptcy Court,
W. D. Kentucky.

July 28, 1980.

As Amended Aug. 19, 1980.

David T. Stosberg, Louisville, Ky., for plaintiff.

Dan E. Siebert, Louisville, Ky., for defendant.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The debtor, a real estate broker and salesman, seeks to avoid a lien on his automobile by claiming it as exempt under 11 U.S.C. § 522(f)(2)(B) as a "tool of the trade" essential for continuation of his occupational pursuits.

It is undisputed that the plaintiff, Credithrift of America, Inc., holds a non-possessory, non-purchase money security interest in the automobile of the debtor, Donald Dubrock. The balance outstanding on the debt secured by the automobile, a 1974 Cadillac, is $4,760.00.

Support for Dubrock's contention that his auto is a tool of the trade may be found in a number of state court decisions.[1] These

---

1. *Sun Ltd. v. Casey*, 96 Cal.App.3d 38, 157 Cal.Rptr. 576 (1979); *Gunn v. Credit Service Corp.*, 46 So.2d 628 (La.App.1950); *Dowd v. Heuson*, 122 Kan. 278, 252 P. 260 (1927).

cases generally focus on state exemption laws which preclude tools or implements of one's trade from execution for judgment. Since these laws are generally the same as those used in a bankruptcy context[2] the legal reasoning attending such decisions has vitality here.

Federal courts employing the Bankruptcy Act of 1898 have also examined the validity of exempting motor vehicles used for a business purpose as "tools of the trade".[3] By virtue of Section 6 of that Act, reference in those cases was necessarily made to provisions of the state exemption statutes.

Whenever confronted with the question of whether an automobile qualifies for the tool-of-trade exemption, both state and federal jurists have rooted their conclusions in the fact of the case before them.[4]

Considering those facts, courts have generally held that an automobile may be a tool of trade if it is necessary for and is used in connection with one's trade.

Upon analysis of the case law, one can discern in which instances treatment of a car as a tool of the trade should be favorably received. Most like this case is *Sun Ltd. v. Casey*,[5] where a real estate agent's automobile was declared a tool of the trade and thus exempt from an execution for judgment.

Sales managers,[6] an insurance adjuster,[7] and various trade workers[8] have also been deemed sufficiently in need of a vehicle to carry on their professions so as to permit their car to be considered a tool of their trade.

■ Generally, a car is classified a tool of trade only if the occupation of its owner is uniquely dependent on its use. It is not sufficient if one's dependence on the car is limited to use for travel to and from work.[9] The use of a car merely as a means of transportation to one's place of employment is hardly comparable to using it as an essential instrument of employment. That was the conclusion we reached today in considering a similar claim of exemption in a factually distinguishable case, *First Hardin National Bank v. Damron*, 5 B.R. 357.

Plaintiff relies upon *Credithrift of America, Inc. v. Meyers*[10] for support of its contention that Dubrock's car is not a tool of the trade. In that case, however, the debtor needed his truck merely to go to and from work. The court thus declined to give the debtor a tool-of-trade exemption. It did not negate the possibility that a motor vehicle might in some circumstances be a tool of trade. Rather, it was recognized that "restricting a debtor's claim of exemption of a motor vehicle as a tool of trade to cases in which the motor vehicle is necessary to, and used by the debtor to carry on his trade, accomplishes what was intended by Section 522(f)".[11]

In every sense, Dubrock's use of his car is necessary to carry on his business. A salesman of real estate must have constant and

---

2. See e. g. Ky.Rev.Stat. § 427.010 et seq., as amended by 80 BR 441, S. 31, April 9, 1980, which provides generally for exemptions for real and personal property as well as for bankruptcy exemptions.

3. *In re Trotter*, 97 F.Supp. 249 (D.C.La.1951); *In re Bailey*, 172 F.Supp. 925 (D.C.Neb.1959); *In re Spiewalk*, [1967–1970 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 62,893 (D.C.Cal.1968); *In re Frank*, [1970–1973 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 64,777 (D.C.N.Y.1973).

4. See e. g. *Gunn v. Credit Service Corp.*, supra note 1 at 630, where it was stated that "[T]he facts of each individual case must be considered and only in such facts can be found the answer to the question presented."

5. Supra, note 1.

6. *In the Matter of Pioch*, 235 F.2d 903 (3rd Cir. 1956); *In re Trotter*, supra note 3.

7. *Gunn v. Credit Service Corp.*, supra note 1.

8. *Dowd v. Heuson*, supra note 1; *In re Bailey*, and *In re Spiewall*, supra note 3.

9. *In re Yoss*, 5 BCD 220 (D.Or.1979); *Credithrift of America v. Meyers*, 2 B.R. 603, 5 BCD 1306 (E.D.Mich.1980).

10. Id.

11. Id., at 606, 5 BCD at 1307.

immediate access to reliable transportation, for not only himself but his clients.

Credithrift asserts that the enumeration of an automobile elsewhere in the exemption provision [12] precludes its classification as a tool of trade. It is further maintained that because a motor vehicle is not statutorily recognize as a tool of trade, its designation as such is inappropriate.

The well-settled rule that exemption statutes are to be liberally construed [13] rang never more true than here. Congress, unwilling or unable to enumerate the countless items which, depending upon one's trade, might be "tools", left that determination to the judiciary.

 The description of an object as a "tool" necessarily implies a classification based upon that object's functional and utilitarian purpose in the hands of its owner or user. While an automobile never ceases to be an automobile, its function may also require its designation as a tool of trade. Such is the case here.

The tool-of-trade exemption has heretofore been applied against the debtor's equity in the property he seeks to exempt. It was not employed as a means for lien avoidance. In this instance, Dubrock has no equity in his car, and attempts to avoid Credithrift's lien.

Section 522(f)(2)(B) of the Bankruptcy Code [14] permits the avoidance of a lien on tools of a debtor's trade to the extent that the lien impairs an otherwise valid exemption. This is an exception to the general rule that valid liens are enforceable as against nonexempt property as well as exempt property.[15]

It should not automatically be presumed, however, that the application of § 522(f) necessarily permits *total* avoidance of a valid lien that is a non-possessory, non-purchase money security interest. The lien may be avoided only to the extent of the debtor's allowable exemption, with the remainder of the lien being otherwise enforceable.[16]

To determine the extent to which one is entitled to avoid a lien under subsection (f), reference must be made to either the state or Reform Act exemption schedule. This matter arising under the federal exemption schedule, we need only to consider the impact of subsection (f) on the exemptions provided in § 522(d).

Because § 522(f) is applied in conjunction with § 522(d), it must be determined what is, in the words of subsection (f), "an exemption to which the debtor would have been entitled".

Clearly, the avoidance of a lien against a tool of trade necessitates the application of the tool-of-trade exemption provision, Section 522(d)(6).[17] Pursuant to this subsec-

---

**12.** 11 U.S.C. § 522(d)(2).

**13.** 1A *Collier on Bankruptcy*, ¶ 6.03[3] (14th Ed. 1978); See also *Sun Ltd. v. Casey*, supra note 1 where a realtor was allowed the $2,500 tool-of-trade exemption on his car despite the availability of a $500 motor vehicle exemption.

**14.** Section 522(f)(2)(B) reads as follows:
　(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
　　(2) a nonpossessory, nonpurchase-money security interest in any—
　　(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or—

**15.** 11 U.S.C. § 522(c) and accompanying legislative history in H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

**16.** To fully understand this, one must first appreciate the interplay between subsections (f), (b) and (d) of Section 522. Subsection (f) addresses liens which impair a debtor's exemption under "subsection (b)". Subsection (b) in turn provides the debtor with a choice between the federal exemptions prescribed in subsection (d) or those available under state law. See also 3 *Collier on Bankruptcy* ¶ 522.29 (15th Ed. 1979).

**17.** This provision reads as follows:
　(d) The following property may be exempted under subsection (b)(1) of this section:
　　(6) The debtor's aggregate interest, not to exceed $750 in value, in any implements,

tion, Dubrock may avoid Credithrift's lien to the extent of $750.

But neither the exemption provisions, nor Dubrock's lien avoidance capabilities, end there.

Under § 522(d)(5),[18] a debtor may claim as exempt up to $400 in his interest in *any* property plus any portion of his unused homestead exemption. Where the debtor claims no homestead exemption, he is entitled to exempt up to $7,900 worth or property over and above the otherwise allowable exemptions that are specifically enumerated elsewhere in § 522(d).

In the instant case, personal property exemptions, including the debtor's automobile, total only $1,687.40. The debtor owns no realty.

As is indicated in the Congressional Report,[19] subsection (f) permits a debtor to avoid a non-purchase money security interest "to the extent that the property could have been exempted in the absence of the lien." [20]

In this case, if Dubrock had full equity in his vehicle and its value exceeded a specific exemption, he could easily avail himself of § 522(d)(5) to exempt the car totally.

Likewise, the "spill-over" effect of paragraph (d)(5) permits the total avoidance of Credithrift's lien. In essence, the interplay between subsections (d) and (f) of § 522 has resulted in Dubrock's being furnished with full equity in his automobile. Credithrift is left with an entirely unsecured claim.

We note by way of *obiter* that the exemption schedule provided in 11 U.S.C. § 522(d) is no longer available to persons filing in this state. The General Assembly of the Commonwealth of Kentucky has made mandatory the application in bankruptcy of Kentucky's exemption provisions.[21]

Like the federal exemption, Kentucky allows an exemption for "the tools of *any individual debtor* necessary in his trade".[22] Unlike the federal statute, Kentucky's tools-of-trade provision only allows a $300 exemption. Further, although there is a general exemption allowance of $1,000,[23] there is no "spill-over" of the unused portion of the state homestead exemption.

The Kentucky exemption chapter co-exists with, but does not displace, the lien avoidance section of 11 U.S.C. § 522(f).[24] The effect of § 522(f) is not, and cannot be, altered by Kentucky exemption provisions. In cases commenced after April 9, 1980, avoidance of a lien against a tool of trade will only be realized to a maximum of $1,300.

Upon the foregoing reasoning and authorities, it is hereby

ORDERED that the motion to avoid the lien on the debtor's automobile is sustained. It is further ordered that the complaint of Credithrift of America, Inc., to lift the automatic stay is dismissed. This is a final order. Judgment shall be entered accordingly.

---

professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

**18.** Paragraph 5 of subsection (d) exempts:
 (5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.

**19.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977) and S.Rep. No. 989, 95th Cong., 2nd Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 (under subsection (e)).

**20.** Id.

**21.** 80 B.R. 441, S. 31, § 10, April 9, 1980.

**22.** Ky.Rev.Stat. § 427.030, as amended by 80 B.R. 441, S. 31, § 2, April 9, 1980 (emphasis added).

**23.** 80 B.R. 441, S. 31, § 9, April 9, 1980.

**24.** 3 *Collier on Bankruptcy* ¶ 522.29 (15th Ed. 1979); *In re Clarence and Lillian Hill*, 4 B.R. 310, 6 BCD 307 (N.D.Ohio 1980).