**In re Curtis Neal HEAPE and Billie Jean Heape, Debtors.**

**Curtis Neal HEAPE and Billie Jean Heape, Debtors–Appellants,**

v.

**CITADEL BANK OF INDEPENDENCE, Appellee.**

No. 88–1739.

United States Court of Appeals, Tenth Circuit.

Sept. 22, 1989.

# 281

Donald B. Clark, Wichita, Kan., for debtors-appellants.

James R. Gilhousen of Crockett, Keeley & Gilhousen, Wichita, Kan., for appellee.

Anne L. Baker of Eidson, Lewis, Porter & Haynes, Topeka, Kan., filed an amicus brief for the Kansas Bankers Ass'n.

Before LOGAN, SEYMOUR and BALDOCK, Circuit Judges.

## PER CURIAM.

The issue on appeal in this case is whether the bankruptcy debtors' breeding livestock, exempt from the bankruptcy estate by virtue of state statute, is also protected by the lien avoidance provisions of 11 U.S.C. § 522(f)(2)(B) (1982) as a "tool of the trade." We conclude that § 522(f) permits the lien on this debtor's breeding stock to be avoided to the $5000 limit of the state exemption.[1]

Debtors in bankruptcy, Curtis Neal Heape and Billie Jean Heape, filed for relief under Chapter 7 of the Bankruptcy Code. Pursuant to Kan.Stat.Ann. § 60–2304(5) (1983), they claimed exemption of nineteen head of breeding stock.[2] No objection was filed to debtors' assertions that they were farmers or to their claim of this exemption, and thus the exemption was automatically allowed. The bankruptcy court went on to find that the breeding stock constituted security for a nonpurchase money, nonpossessory lien held by Citadel Bank of Independence (Kansas). The court held that the lien was not avoidable under 11 U.S.C. § 522(f)(2)(B) as a lien on "tools of the trade." The Heapes appealed the denial of lien avoidance to the federal district court, which affirmed the bankruptcy court's decision. *In re Heape*, 85 B.R. 577 (D.Kan.1988).

The district court found that the common meaning of the terms "tools" or "implements" does not include livestock, and that to construe livestock as a tool would be an unjustified deviation from normal usage of the term. *Id.* at 578. In addition, the court noted that Congress included the term "animals" in the section of the code avoiding liens on exempt household goods and furnishings, § 522(f)(2)(A), but did not include it as a separate, specific category under § 522(f)(2)(B). *Id.* The district court stated that the lien avoidance provisions were intended to prevent creditors from forcing debtors to reaffirm consumer debts while preserving the possibility of a fresh start for the debtor, but that every item exempt under state law is not necessarily protected by the federal lien avoidance provisions. *Id.* at 578–79. The district court agreed with the analysis of the

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

2. Kan.Stat.Ann. § 60–2304 (1983) provides:
   "*Personal property; articles exempt.* Every person residing in this state shall have exempt from seizure and sale upon any attachment, execution or other process issued from any

court in this state, the following articles of personal property:
   . . . .
   (5) The books, documents, furniture, instruments, tools, implements and equipment, the breeding stock, seed grain or growing plants stock, or the other tangible means of production regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation in an aggregate value not to exceed five thousand dollars."

Seventh Circuit in *In re Patterson*, 825 F.2d 1140, 1146 (7th Cir.1987), that livestock are in the nature of capital assets rather than tools of the trade. *Heape*, 85 B.R. at 579.

■ We review the legal determinations of the district court de novo, although we accept the factual findings of the bankruptcy court unless they are clearly erroneous. *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399–400 (10th Cir.1986).

■ Section 522(f) of the Bankruptcy Code[3] permits debtors to avoid the fixing of certain liens to the extent they impair an exemption existing under either federal or state law. *Patterson*, 825 F.2d at 1146; 3 *Collier on Bankruptcy* ¶ 522.29[1] (L. King 15th ed. 1989). It is undisputed that debtors' claimed breeding stock is exempt under state statute, Kan.Stat.Ann. § 60–2304(5) (1983). While state law governs the question of the debtors' exemption on their breeding cattle, federal law determines the availability of lien avoidance under § 522(f). *In re Thompson*, 750 F.2d 628, 630 (8th Cir.1984); *Eakes v. Farmers Home Admin. (In re Eakes)*, 69 B.R. 497, 498 (Bankr.W.D.Mo.1987). *But cf. In re Thompson*, 867 F.2d 416, 420–21 (7th Cir. 1989) (using state law definition of "tools of the trade" for § 522(f)(2)(B) when debtor elected state law exemptions); *In re Newbury*, 70 B.R. 1, 1 (Bankr.D.Kan.1985) (same). Liens on property exempt under Kansas law are avoidable only if enumerated in 11 U.S.C. § 522(f)(2). *Newbury*, 70 B.R. at 1.

■ The statute's legislative history can be of assistance to us.[4] *Production Credit Association v. LaFond (In re LaFond)*, 791 F.2d 623, 627 (8th Cir.1986) (quoting *In re Duchesne*, 21 B.R. 390, 391 (N.D.N.Y. 1982)), explains that § 522(f)(2)(A) was intended to protect household goods with low resale value from being the subject of creditor coercion of the debtor, while § 522(f)(2)(B) was intended to allow a debtor " 'to make a fresh start after bankruptcy by the use of tools or implements necessary to enable him to pursue and make a living at his trade.' "

Because the term "tools of the trade" is not defined by statute or legislative history, decisions among bankruptcy courts are inconsistent. Courts have based their analyses on such diverse rationales as the plain meaning of the word "tool," the value of the property in question, the interaction between the federal exemption and lien avoidance statutes, and the ratio of the property to the total capital assets of the debtor. *In re Bulger*, 91 B.R. 129, 131–32 (Bankr.M.D.Ala.1988).

The *Bulger* court rejected all these tests in favor of the "use" test set forth in *Walkington v. Production Credit Association (In re Walkington)*, 42 Bankr. 67, 72 (Bankr.W.D.Mich.1984); *see also Credithrift of Am., Inc. v. Dubrock (In re Dubrock)*, 5 B.R. 353, 354–55 (Bankr.W.D.Ky. 1980) (a tool is an item which is necessary and used by the debtor in his business). This "use" test is compatible with Kansas exemption law. Eight decades ago, the Kansas Supreme Court accepted the "use" test when it defined "tools of the trade" as found in the Kansas exemption statute: "[For] tools and implements ... [to come within] the operation of the statute. . . . [i]t is enough that they belong to the ... [debtor], that they are necessary and are personally used for the purpose of carrying on his trade or business." *Reeves & Co. v. Bas-*

---

**3.** 11 U.S.C. § 522 provides in pertinent part:
"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . .

(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books,

animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor. . . ."

**4.** For an exhaustive recapitulation of the legislative history of the federal lien avoidance statute, see *In re Neiheisel*, 32 B.R. 146, 148–62 (Bankr.D. Utah 1983).

*cue*, 76 Kan. 333, 91 P. 77, 77 (1907); *see also In re Currie*, 34 Bankr. 745, 748 (D.Kan.1983) ("The test in Kansas has long been that the property must be reasonably necessary, convenient or suitable for the production of work [in order to qualify as tools of the trade under Kan.Stat.Ann. § 60–2304(5) ].").

The Heapes rely on *Walkington*, a decision holding that dairy cattle are tools of the trade for a dairy farmer. The *Walkington* court's analysis is persuasive:

"It is the view of this Court that Congress intended [§ 522(f)(2)(B) ] to have a common sense interpretation on a case-by-case basis with the key inquiry focusing on the necessity of an item to the individual debtor's particular business or employment.

. . . .

... While cattle are not generally considered a 'tool' in common parlance, nevertheless 'the description of an object as a "tool" necessarily implies a classification based upon that object's functional and utilitarian purpose in the hands of its owner or user.' ... Congress did not place any limit on the kinds of property that may constitute a 'tool' since to do so would unfairly discriminate against particular professions and undermine the fresh start policy that the Code seeks to promote."

42 B.R. at 71–72 (quoting *Dubrock*, 5 B.R. at 355).

*LaFond*, 791 F.2d at 626, quotes *Middleton v. Farmers State Bank*, 41 B.R. 953, 955 (D.Minn.1984): "As a practical matter, a narrow construction [of the definition of 'implements' and 'tools of the trade' under § 522(f)(2) ] punishes the farmer for being inadvertently dependent on expensive tools of the trade as compared to other trades more dependent on smaller hand tools." *See also* 3 *Collier on Bankruptcy* ¶ 522.15, at 522–57 to 522–58 n. 1 (L. King 15th ed. 1989) (stove of candy-maker, conveyances of poultry dealer, canoe of registered guide, presses of printer, and law library of debtor-attorney are each exempt as "tools of the trade" under various state statutes).

Farming is a unique business, implying self-employment and economic independence and self-determination. To give the farmer the wherewithal for a fresh start includes not only hand tools, but also the equipment, implements, breeding stock and other basic necessities for beginning anew on a modest scale as a modern food producer. The Kansas legislature exempted breeding livestock from a debtor's estate, recognizing that if the debtor were stripped of these basic resources, he or she would be unable to begin anew in farming. *But cf. Newbury*, 70 B.R. at 2 (fact that Kansas legislature separately enumerated breeding stock indicates their belief that breeding stock is not a "tool of the trade").

Tenth Circuit case law utilizes a practical application of the federal lien avoidance statutes. This court in *First Bank v. Reid (In re Reid)*, 757 F.2d 230 (10th Cir.1985), considered the denial of lien avoidance on paintings worth more than $180,000 as items held primarily for household use, upholding the bankruptcy court's determination that the paintings were not held primarily for household use. The *Reid* court espoused a policy of evaluating each case "on its merits with regard to its own particular facts and circumstances to prevent abuses by either creditors or debtors." *Id.* at 236 (quoting *Fisher v. Credithrift of Am., Inc. (In re Fisher)*, 11 B.R. 666, 669 (Bankr.W.D.Okla.1981)). Later, in the case of *Central National Bank & Trust Co. v. Liming (In re Liming)*, 797 F.2d 895 (10th Cir.1986), we examined whether a $30,000 tractor, exempt as an "implement" under a state exemption statute, was an "implement" for the purpose of federal lien avoidance. We there held that "a tractor is a necessary 'implement' of a farmer's trade under any historical or common sense understanding of the term." *Id.* at 901.

Breeding stock to the livestock farmer is the functional equivalent of the crop farmer's tractor—a means of producing physically distinct agricultural products. That breeding stock is composed of live animals does not change its essential function in the hands of the farmer. We are satisfied that the *Liming* rationale encompasses a farmer's breeding stock.

We are not persuaded by two arguments used to support a more restrictive reading

of § 522(f)(2)(B). The Seventh Circuit's view that "capital" assets cannot constitute "tools of the trade," *see Patterson*, 825 F.2d at 1146, is a slippery slope. The term "capital asset" may have different meanings to economists, accountants, financial analysts, and the Internal Revenue Service. Almost all tools and implements would be classified as capital assets for taxation purposes. Our task is to more clearly understand the term "tools of the trade," not to add another layer of definition and interpretation. *See also Bulger*, 91 B.R. at 132.

Some also urge a restrictive interpretation of § 522(f)(2)(B) out of concern that credit for the farmer will dry up if lenders are less secure about their capability of foreclosing liens on livestock. We note, however, that the *LaFond* court rejected the creditor's contention that allowing avoidance of liens on large farm implements would damage farmers by reducing the amount of collateral available to use to obtain loans, in these words:

> "Whether or not these considerations outweigh the value of providing a fresh start for the bankrupt is not for us to decide.... 'It is not the function of this court to question why Congress chose to permit debtors to avoid the particular liens enumerated in Subsection (f).' "

791 F.2d at 627 (quoting *Augustine v. United States*, 675 F.2d 582, 586 (3d Cir. 1982)). In *Liming*, we addressed the question of whether expansive reading of the federal lien avoidance section would lead to tighter credit for farmers. We described the balancing factors to be considered and then deferred the question to the legislature: "This policy decision is for Congress, not the courts." 797 F.2d at 901.

We conclude that under the circumstances presented here, in which the state exemption statute limits the value of the livestock to $5000[5] and limits the exemption itself to breeding stock (as opposed to feed-

lot cattle),[6] this livestock is within the scope of § 522(f). The Heapes' modest herd of breeding cattle is a necessary tool of their trade as farmers. As such, it is subject to the protection of the federal lien avoidance statute.

The judgment of the United States District Court for the District of Kansas is REVERSED, and the matter is REMANDED to the Bankruptcy Court for the District of Kansas for further proceedings consistent with this opinion.

---

**5.** Because § 522(f) allows the debtors to avoid this lien only "to the extent" it impairs their exemption, no more than $5000 of this lien can be avoided. *See* 3 *Collier on Bankruptcy* ¶ 522.29[1] at 522–89 to 522–90 (L. King 15th ed. 1989).

**6.** We do not hold that the lien exemption of § 522(f)(2)(B) necessarily applies to all livestock. Breeding stock can be distinguished from livestock held for sale, the latter being more in the nature of inventory or raw materials. *See In re Cook*, 66 B.R. 3, 4 (Bankr.W.D. Wis.1985).