In re Michael L. **SMITH**, Regina M. Smith, Debtors.

Bankruptcy No. 96–11751KC.

United States Bankruptcy Court, N.D. Iowa.

Dec. 11, 1996.

---

Michael A. Bowman, Monticello, IA, for Debtors.

Thomas McCuskey, Cedar Rapids, IA, for Chapter 7 Trustee.

Martin McLaughlin, U.S. Attorney's Office, Cedar Rapids, IA, for Objector Farm Service Agency.

### ORDER RE MOTION TO AVOID LIEN AND OBJECTION TO EXEMPTION

PAUL J. KILBURG, Bankruptcy Judge.

On November 21, 1996, the above-captioned matter came on for hearing pursuant to assignment. Debtors appeared in person with Attorney Michael Bowman. The Chapter 7 Trustee, Thomas McCuskey, was present. Also present was Objector Farm Service Agency through Assistant U.S. Attorney Martin McLaughlin. The matters before the Court are a Motion to Avoid Lien filed by Debtors with a resistance filed by FSA, and an Objection to Exemptions filed by FSA with a resistance filed by Debtors. Evidence was presented after which the Court took this matter under advisement. The parties were granted until December 6, 1996 within which to file simultaneous briefs. The briefing deadline has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (K).

At the time of hearing, the FSA withdrew its objection to exemptions. It is now stipulated that the cattle and feed are exempt under Iowa Code sec. 627.6(11)(b). The parties also stipulate that the security interests involved are nonpossessory, non-purchase money security interests.

### FINDINGS OF FACT

Debtor Michael L. Smith and Regina M. Smith reside on Highway 64 in Jones County, Iowa. Michael Smith has been a farmer all his life and would like to continue farming. FSA concedes that Debtors have a good faith

intention to continue in their farming operation. Debtors' farming operation consists of approximately 400 acres. Only a few acres of soy beans are raised to be sold; the remaining grain is fed to Debtors' cattle. Most of the land is timber ground.

The principal farming operation by Debtors involves breeding cattle and selling the calves once a year. Debtors generally keep the breeding stock for fourteen years. The calves are retained for approximately six or seven months after birth until they reach a weight of 500 lbs. and are then sold. The sale of the calves constitutes the primary cash producer for Debtors. Debtors presently have two bulls in the farming operation. One bull is secured by FSA and is included in this lien avoidance motion. The other bull is secured solely by Citizens State Bank under a security interest that is not at issue.

The issue to be resolved is whether Debtors' Motion to Avoid Lien should be granted. Both parties stipulate that the cattle and grain are exempt under State exemption law. Both parties also concede as a general proposition of law that while exemption issues require application of state law, lien avoidance is solely an issue of federal law. FSA claims that under federal law, the cattle and feed are not subject to lien avoidance under § 522 of the Bankruptcy Code. Debtors concede that even though the calves were part of their lien avoidance claim, if the calves are to be considered the produce in question, lien avoidance would not apply toward the calves. Therefore, the issue is whether under § 522 Debtors are able to avoid the lien of FSA on the grounds that the breeding stock are tools of the trade.

### CONCLUSIONS OF LAW

■ A debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled if such lien is a nonpossessory, nonpurchase money security interest in:

> (ii) implements, professional books, or tools of the trade of the debtor or a dependent of the debtor.

11 U.S.C. § 522(f)(1)(B)(ii). This section was designed to allow a debtor to make a fresh start after bankruptcy by the use of tools or implements necessary to enable the debtor to pursue and make a living in a chosen trade. *In re LaFond*, 791 F.2d 623, 627 (8th Cir. 1986). Neither the Bankruptcy Code nor the legislative history of this section defines the phrase "tools of the trade." *In re Walkington*, 42 B.R. 67, 71 (Bankr.W.D.Mich.1984). Courts have split on the question of whether cattle may be considered "tools of the trade."

Some courts have looked to the functional and utilitarian purpose of the alleged tool of the trade. *Walkington*, 42 B.R. at 71; *In re Dubrock*, 5 B.R. 353, 355 (Bankr.W.D.Ky. 1980); *In re Bulger*, 91 B.R. 129, 131–32 (Bankr.M.D.Ala.1988). These courts have stated that Congress did not place any limit on the kinds of property that may constitute tools of the trade because doing so would unfairly discriminate against particular professions and undermine the fresh start policy the Code promotes. *Walkington*, 42 B.R. at 72. The courts conclude that "tools of the trade" was intended by Congress to have a common sense interpretation on a case-by-case basis, with the key inquiry focusing on the necessity of an item to the individual debtor's particular business or employment. *Id.* at 72. The description of an object as a tool necessarily implies a classification based upon that object's functional and utilitarian purpose in the hands of its owner or user. *Dubrock*, 5 B.R. at 355.

■ Using the functional or utilitarian analysis, courts have held dairy cows to be specialized tools of the trade for dairy farmers. *Walkington*, 42 B.R. at 72; *In re Cook*, 66 B.R. 3, 5 (Bankr.W.D.Wis.1985). These decisions are based upon the theory that a cow which is not the product of the debtor's trade, but rather is the apparatus which the debtor operates to produce a product, is a tool of the trade. *Cook*, 66 B.R. at 5. One court justified its determination that cattle may be considered "tools of the trade" by citing federal taxation laws, which allow livestock used for dairy, breeding or draft purposes to be depreciated as property used in the debtor's trade or business. *Id.* (citing 34 Am.Jur.2d *Federal Taxation*, ¶ 5515 (1984)).

The Tenth Circuit has adopted this functional or utilitarian approach. *In re Heape,* 886 F.2d 280, 283 (10th Cir.1989). The Tenth Circuit held in *Heape* that breeding stock is a tool of the trade for a farmer. *Id.* The court's decision rested on the fact that the state legislature had specifically exempted breeding stock. *Id.*

Other courts have held that cattle are not tools of the trade and that liens upon cattle cannot be avoided under § 522(f)(1)(B)(ii). *In re Newbury,* 70 B.R. 1, 2 (Bankr.D.Kan. 1985); *In re Eakes,* 69 B.R. 497, 498 (Bankr. W.D.Mo.1987). The courts state that § 522(f)(1)(B) separately enumerates "animals" in subsection (i), and "tools of the trade" in subsection (ii). *Newbury,* 70 B.R. at 2; *Eakes,* 69 B.R. at 498. As a result of this separate enumeration, these courts conclude that Congress did not intend to include livestock in a definition of tools of the trade, but instead referred to inanimate objects which augment or extend the limits of human physical ability or power. *Newbury,* 70 B.R. at 2; *Eakes,* 69 B.R. at 498. A debtor's lien avoidance power under § 522 lies against only the categories of assets that are identified in that statute. *In re Flitter,* 181 B.R. 938, 942 (Bankr.D.Minn.1995). A debtor may only avoid nonpossessory, non-purchase money security interests in animals to the extent that the animals are held "primarily for the personal, family, or household use of the debtor or a dependent of the debtor." *Id.* (citing 11 U.S.C. § 522(f)(1)(B)(i)).

The Seventh Circuit has addressed the question of whether cattle may be considered "tools of the trade." *In re Patterson,* 825 F.2d 1140, 1146 (7th Cir.1987). Construing the federal exemptions under § 522(d), the Seventh Circuit held that cattle may not be considered "tools of the trade." *Id.* The court considered the argument that cattle were tools of the trade considered the argument that cattle were tools of the trade because they are instrumentalities for turning raw materials into salable products. *Id.* It rejected that analysis stating that such a broad interpretation would entitle all capital and labor inputs of a business to be tools of the trade. *Id.* The court stated that defining cattle or other livestock as tools of the trade "does particular violence to the English language." *Id.*

This court has previously addressed the issue of whether a dairy cow is a tool of the trade for a dairy farmer. *In re Dudley,* No. L–90–00535W, slip op. at 3 (Bankr.N.D.Iowa August 28, 1990). After considering the analysis of both the Tenth Circuit in *Heape* and the Seventh Circuit in *Patterson,* this Court concluded that the Seventh Circuit had adopted a better-reasoned approach. *Id.* The basis of the debtor's claim in *Dudley* was that the dairy cattle should be considered tools of the trade because they turn water and grass into milk, a salable product on which the debtor depends to make his living. *Id.* This Court followed the *Patterson* approach which holds that not all capital assets used in creating a salable product constitute tools of the trade. *Id.* This Court continued its analysis by finding support for the proposition that cows were not tools of the trade in *In re Hahn,* 5 B.R. 242 (Bankr.S.D.Iowa 1980), which defined a tool by the common definition of an instrument of manual operation, and cited examples of a saw or a hammer. *Id.*

■■■ Although in the present case Debtors cattle are used for breeding and not for dairy as the cattle in *Dudley* were, this Court believes its prior decision in *Dudley* is controlling on this matter. Debtors Michael L. Smith and Regina M. Smith make the same basic argument for avoiding the liens on the cattle used for breeding that was rejected in *Dudley.* Debtors state that the cattle are used to create a salable product, calves, on which they make their living. The use of property to create a salable product does not automatically establish that property as a tool of the trade. This Court must follow the established definition of tools of the trade in this jurisdiction, instruments of manual operation, and reject the argument that breeding cattle are tools of the Debtors' trade.

Lien avoidance for animals is already provided for in the § 522(f)(1)(B)(i), and is limited in that section to animals used only for the personal, family or household use of the debtor or the dependents of the debtor. To allow Debtors to avoid the lien on their cattle would ignore the limitation set by Congress

on lien avoidance for animals in the first subsection of § 522(f)(1)(B). Accordingly, this Court finds that the nonpossessory, non-purchase money security interest held by FSA may not be avoided by Debtors, because a limitation has been established on lien avoidance for animals, and because breeding cattle do not constitute tools of the trade.

■ A final issue for determination is Debtors' Motion to Avoid Liens on cattle feed. The evidence establishes that Debtors raised a limited amount of grain and hay on their farm. Some grain and hay are apparently still in their possession. The testimony establishes that the grain and hay were used primarily to feed the cattle with a small amount of beans being available for sale. It is clear and does not appear to be substantially contested that the remaining grain and hay do not constitute items held for personal, family or household use and are, therefore, not subject to lien avoidance under § 522(f)(1)(A)(i).

It is the conclusion of this Court that these items are also not subject to lien avoidance under § 522(f)(1)(B). As the hay and grain are a food source for the cattle, they are more nearly analogous to general inventory which is used to generate income. This Court has previously held that items of general inventory do not constitute tools of the trade and are, therefore, not subject to lien avoidance under § 522. *See In re Metzig*, 33 B.R. 620, 623 (Bankr.N.D.Tx.1983); *In re Hernandez*, 131 B.R. 61, 64 (Bankr.W.D.Tx. 1991); and *In re Ackerman*, No. 94–21846KD, slip op. at 7 (Bankr.N.D.Iowa April 12, 1995).

For all of these reasons, it is the conclusion of this Court that any remaining hay, corn or other grain is not subject to lien avoidance under § 522.

WHEREFORE, for all the reasons set forth herein, Debtors' Motion to Avoid Lien on their cattle, calves, and grain pursuant to § 522(f)(1)(B)(ii) is DENIED.

FURTHER, judgment shall enter accordingly.