In re Walter J. SACKETT, SS# XXX–XX–XXXX, Julie A. Sackett, SS# XXX–XX–XXXX, Debtors.

No. 08–10131 SBB.

United States Bankruptcy Court, D. Colorado.

Aug. 22, 2008.

545

Maria J. Flora, Esq., Maria J. Flora, P.C., Denver, CO, for Cynthia Skeen, Chapter 7 Trustee.

Jeffrey A. Weinman, Esq., William A. Richey, Esq., Weinman & Associates, P.C., Denver, CO, for Debtors.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

This matter comes before the Court on the Objection to Debtor Julie A. Sackett's Claim of Exemption filed by Cynthia Skeen, Chapter 7 Trustee ("Trustee") on March 4, 2008 (Docket # 33) and the Response thereto filed by Walter and Julie Sackett on March 31, 2008 (Docket # 41). The Court held an evidentiary hearing on this matter on June 10, 2008, and has received legal memoranda from both the Debtor Julie A. Sackett ("Debtor") filed on June 26, 2008 (Docket # 60) and the Trustee, filed on June 27, 2008 (Docket # 63). The Court makes the following findings of fact, conclusions of law, and enters the following Order.

## I. Summary

The Trustee objected to the Debtor's claim of an exemption for her motor vehicle under CoLo.Rev.Stat. § 13–54–102(1)(i) as "[t]he stock in trade, supplies, fixtures, maps, machines, tools, electronics, equipment, books and business materials of any debtor used and kept for the purpose of carrying on any gainful occupation" rather than under the less beneficial exemption under CoLo.Rev.Stat. § 13–54–102(1)(j) for "[o]ne or more motor vehicles." Distinguishing between a vehicle used conventionally for personal use and a motor vehicle used for the purpose of carrying on "any gainful occupation" can be difficult in and of itself, but doing so in the context of bankruptcy and in circumstances where the Debtor is changing jobs and moving to a new locale makes it still more complicated. Such is the case here. The Court concludes that, under this Debtor's circumstances, she is entitled to claim the motor vehicle as one used to carry on a gainful occupation and she is entitled to the more advantageous claim of exemption.

## II. Findings of Fact

Debtors filed for relief under Chapter 7 of the Bankruptcy Code on January 7,

2008. The filing of the Chapter 7 case was precipitated by the dismissal of a separate Chapter 11 case filed for Debtors' business, Excelcare, Inc. ("Excelcare"). Debtor, Julie A. Sackett, at the time of the Chapter 7 filing, was the owner of a 2004 Acura MDX automobile ("Vehicle") which she scheduled with a value of $17,415.00 [1] and which she claimed as exempt because she used the Vehicle in her work. The Vehicle was purchased by the Debtors on December 11, 2004.

Debtor has been a nurse since 1978. Since that time, she has: (a) worked as a home health care nurse, (b) worked as a public health nurse, (c) taught nursing, (d) run programs at hospitals requiring her to coordinate the programs with satellite hospitals and other private agencies which participated in the programs, and (e) served as a surgical nurse at various hospitals. Immediately prior to the filing of this Chapter 7 case, Debtor was an owner and employee of Excelcare.

Excelcare was in the business of providing heath care and counseling services. As a manager, administrator, and employee of Excelcare, Debtor was required to use her vehicle to coordinate treatment plans for patients serviced by Excelcare. Her job at Excelcare was as a clinical director and her duties included: supervising all safety and compliance issues, overseeing clinical coordinators and health care service providers in the field, training psychologists with respect to possible treatment plans, working with nurses in the home, assisting and preparing care plans, including going to patients' homes, and further, participating in audits for Medicare. She was required to use the Vehicle to travel to numerous locations throughout the Front Range of Colorado including the entire Denver metropolitan area, Colorado Springs, Castle Rock, Greeley and Fort

Collins. She used the Vehicle, a sport utility cross-over vehicle, to carry supplies for her job to the various locations to which she traveled.

Prior to her employment with Excelcare, Debtor was a director and manager of the electro convulsive therapy program at Centennial Peaks Hospital between 2000 and 2006. This job entailed startup of the program and included establishing policies and procedures, training, speaking to groups in the community, and a myriad of other duties. Debtor used the Vehicle to perform her functions for this job including carrying relevant materials. In neither of her recent jobs, namely her work for Centennial Peaks Hospital and Excelcare, was another mode of transportation furnished to her. She testified, *and there was no evidence to the contrary,* that the Vehicle was necessary for her to perform her duties.

In mid-November 2007, Debtor ceased to work for Excelcare as it closed its doors. According to her testimony, she immediately sought work and obtained a consulting position with Centennial Peaks Hospital in the electro convulsive therapy department, the department she founded prior to her working for Excelcare. This job for Centennial Peaks Hospital included going onsite to the hospital and other locales. She also sought full time work to supplement her work for Centennial Peaks, including interviews with Centura Health and home health care nursing agencies.

In late December 2007, Debtor's husband and Co–Debtor, Walter J. Sackett, received a job offer in Ohio. The family decided to accept the job and move to Ohio. Accordingly, at the precise moment Debtors filed Chapter 7, they were en

1. Based on the Debtors' Schedules it appears    that the Vehicle is unencumbered.

route to Ohio. Nevertheless, Debtor's un-refuted testimony is that notwithstanding her move to Ohio, she continued to consult with Centennial Peaks Hospital, and indeed, she received on January 18, 2008, a paycheck for her consulting services from Centennial Peaks Hospital. Moreover, immediately upon arriving in Ohio, Debtor sought more localized work, and ultimately in March 2008, obtained a nursing position in Ohio with Kettering Medical Center, a multi-facility institution. Indeed, Debtor's work, as of the hearing date, consisted of traveling and the use of her car in order to perform her duties for Kettering Medical Center. Her current title is Intake Liaison, and in this connection, she uses her car for home visits. She drives between the hospitals. Further, she is taking additional course-work to improve her credentials and this, likewise, requires the use of her vehicle. Debtor does not, however, receive reimbursement for expenses related to the use of the Vehicle by her employer.

From the evidence adduced, it is clear that throughout her adult career as a nurse, Debtor has used the Vehicle for gainful employment. With very limited exception, the great majority of her thirty (30) year service as a nurse has required the use of a vehicle to perform her services. There has been no testimony or evidence to the contrary. In addition, Debtor testified that she needed the Vehicle to obtain the "fresh start" she sought by the filing of the bankruptcy so that she could pursue her occupation, earn money and help get her and her family back on their feet. The evidence before this Court is that throughout her career, including the time immediately prior to, during and subsequent to her bankruptcy filing, on January 7, 2008, Debtor used her car to carry out a gainful occupation. Finally, not only did Debtor intend to return to nursing after the filing of her bankruptcy, the evidence would indicate that she never left that occupation, and that she intended to continue in the nursing profession.

## III. Discussion

### A. Jurisdiction

The pending objection to exemption is a contested core proceeding over which this Court has subject matter jurisdiction under 28 U.S.C. § 157.[2]

### B. Burden of Proof

▆ With respect to the burden of proof, once the exemption is claimed, the party objecting to the claim of exemption has the burden of providing that the exemption is not properly claimed.[3] However, if the objecting party can produce evidence to disallow the exemption, then the burden of production shifts to the debtor to come forward with evidence to demonstrate that the exemption is proper, although the burden of persuasion will remain with the objecting party.[4]

---

**2.** Pursuant to 28 U.S.C. § 157(b)(2)(B):
Core proceedings include, but are not limited to—
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for the purposes of distribution in a case under title 11 ...
See also, In re Letterman, 356 B.R. 540 (Bankr.D.Kan.2006); and In re Stumpff, 109 B.R. 1014, 1017 (Bankr.E.D.Okla.1989).

**3.** FED.R.BANKR.P. 4003(c); In re Larson, 260 B.R. 174, 186 (Bankr.D.Colo.2001).

**4.** Id.

Here, the Trustee did not put on evidence to disallow the exemption other than argument. The Debtor testified that the Vehicle was essential to performing her job and there was no contradicting evidence to this testimony. In this case, the objecting party did not produce evidence, so, likely, the burden never shifted to the Debtor. Even if the Trustee had presented evidence to disallow the exemption, the Debtor's testimony regarding the use of the Vehicle for the purpose of carrying on any gainful occupation was compelling. Here, the Trustee simply did not meet her burden.

### C. The "Tool of the Trade" Exemption

■ Under COLO.REV.STAT. § 13–54–102(1)(i):

The following property is exempt from levy and sale under writ of attachment or writ of execution ... [t]he stock in trade, supplies, fixtures, maps, machines, tools, electronics, equipment, books and business materials of any debtor *used and kept for the purpose of carrying on any gainful occupation in the aggregate value of* $20,000; except that exempt property described in this paragraph (i) may not also be claimed as exempt pursuant to paragraph (j) of this subsection (1)." [5]

Colorado exemption laws are to be liberally construed in favor of debtors.[6]

### D. Standards this Court Considers When Determining Whether a Motor Vehicle is a "Tool of the Trade"

■ Whether a motor vehicle can be considered a "tool of the trade" for the purposes of the exemption statute can be framed by the following questions:

1. Is the vehicle "kept for the purpose of carrying on any gainful occupation?"

2. Is there a suitable alternative available to the debtor for the purpose of carrying on the debtor's gainful occupation?

3. Is there evidence of "actual use" of the vehicle by a debtor for his or her gainful occupation?

4. What is the debtor's prior employment history, present employment situation, and future prospects of employment?

5. Is a "fresh start" attainable without the motor vehicle?

■ First, is the Debtor's vehicle "kept for the purpose of carrying on any gainful occupation?" This Court concludes that in order for this element to be satisfied, the facts and evidence before the Court must demonstrate that the Vehicle is a material and essential feature to Debtor's gainful occupation. That is, a debtor's business could not be conducted without the vehicle.[7] And, this determination must be made from the specific facts of the case. As the Honorable A. Bruce Campbell,

---

**5.** Emphasis added. COLO.REV.STAT. § 13–54–102(1)(j) provides that the following property is exempt:

    (I) One or more motor vehicles or bicycles kept and used by any debtor in the aggregate value of five thousand dollars; or

    II(A) One or more motor vehicles kept and used by any elderly or disabled debtor, or by any debtor with an elderly or

disabled spouse or depended, in the aggregate value of ten thousand dollars ...

**6.** Colo. Const. art. XVIII, § 1, which provides that "the general assembly shall pass liberal homestead and exemption laws."

**7.** *In re Black,* 280 B.R. 258, 260 (Bankr. D.Colo.2002).

Bankruptcy Judge for the District of Colorado, stated when examining a pickup truck used by a self-employed building contractor:

> The question of whether, on the facts of this case, Debtor's truck qualifies as a machine or equipment of the debtor used for carrying on a gainful occupation is more difficult. Many workers use a motor vehicle they own in some fashion relating to their gainful occupation—most commonly, in getting to and from work. The mere use of a vehicle for transportation to and from work is not "use for carrying on a gainful occupation," as intended by the Colorado legislature in the exemption of section 13–54–102(i). This court concurs with the decision in *Van Winkle* that a truck driver's use of his rig is use for carrying on gainful occupation. This is perhaps factually the easiest case at the end of the continuum where vehicle use is part of carrying on a gainful occupation. The lawyer who hauls his briefcase in his BMW is also an easy case—at the opposite end of the same continuum. The self-employed building contractor falls somewhere in between. On the specific facts of this case ... this court concludes that this debtor's use of his pickup in his trade/business is close enough to the trucker's end of the continuum and far enough from the lawyers end of the continuum to allow this pickup truck to qualify as exempt pursuant to Colo. Rev.Stat. § 13–54–102(i).[8].

This Court would further expand on Judge Campbell's distinctions to note that, indeed, it may not be appropriate for a carpenter to use an Acura MDX when a likely more appropriate vehicle might be a pickup truck. On the other hand, it may be appropriate for a real estate agent to have a more comfortable vehicle than a pickup truck in order to show houses to clients. *The vehicle must match the job.* Here, the Vehicle is not new and, while it is in the higher-end segment of the automobile market, the Vehicle is appropriate for the work performed by the Debtor and it provides the requisite carrying capacity for the materials and supplies of the Debtor.

Second, is there a suitable alternative available to the Debtor for the purpose of carrying on the Debtor's gainful occupation? Here, the undisputed evidence before this Court is that the Vehicle is essential for and regularly used to go from location to location and, for instance, suitable public transportation is not available or would otherwise not suffice. Moreover, the Vehicle has the capacity to carry supplies needed by the Debtor. No suitable alternative to this Vehicle has been demonstrated or even suggested—again, the vehicle matches the job.

Third, is there evidence of "actual use" of the Vehicle by Debtor for her gainful occupation? The language of Colo.Rev. Stat. § 13–54–102(1)(i) and (j) allows for a distinction between a motor vehicle for personal, household, or casual use and a motor vehicle used for carrying on a gainful occupation and allowing for electing the exemption under (i) or (j). The phrase "may not also be claimed as exempted pursuant to paragraph (j) of this subsection (1)," suggests that the motor vehicle can be claimed exempt under Colo.Rev. Stat. § 13–54–102(1)(i), but only as long as it is "also" not claimed exempt under (j). Here, the Debtor has chosen the exemption found in Colo.Rev.Stat. § 13–54–102(1)(i).[9] The evidence before this Court

---

**8.** *Id.*

**9.** The Trustee urges this Court to decline to approve the exemption citing to *Johnston v.*

is unrefuted that the Debtor actually uses and must use the vehicle for her gainful employment.[10]

Fourth, what is the Debtor's prior employment history, present employment situation, and future prospects of employment? In *In re Larson*, this Court looked to debtors' prior employment history as well as post-petition employment and intentions regarding future employment in order to ascertain the appropriateness of the claimed exemption.[11] Here, the evidence is unrefuted that the Debtor has utilized a motor vehicle as an essential component of her business and occupation for 30 years. The testimony further demonstrates that she continues to use the Vehicle in her business and plans on using a motor vehicle in the future for her business and gainful occupation.

Fifth, is a "fresh start" attainable by Debtor without the Vehicle? This Court concludes that this Vehicle is material and essential in the Debtor's "fresh start."[12] Her ability to conduct business and retain her occupation is dependent upon the use of the Vehicle.

The vast weight of the evidence here, when measured by the standards this Court has considered, strongly favors the

Debtor. Her Vehicle qualifies for the "tool of the trade" exemption because it "is ... used and kept for the purpose of carrying on any gainful occupation."

## IV. Order

IT IS THEREFORE ORDERED that the Trustee's Objection to the exemption with respect to the Vehicle is OVERRULED and DENIED and the Debtor's exemption is allowed.

---

*Barney,* 842 F.2d 1221 (10th Cir.1988). The Court concludes that (1) this is a Wyoming case involving a Wyoming exemption statute with language that does not mirror that of Colorado and (2) the case is inconsistent with more recent cases from this jurisdiction including *Larson* and *Black.*

10. In *In re Heape,* 886 F.2d 280 (10th Cir. 1989), the Tenth Circuit discussed the Kansas exemption statute, but the analysis of the case went to the debtor's "use" of claimed "tool of the trade" to ascertain whether the assets could indeed be claimed exempt as a "tool of the trade." This Court has concluded that this "use" test is consonant with the Colorado exemption statute and case law from the District of Colorado. *Larson,* 260 B.R. at 191.

11. 260 B.R. at 182–86.

12. In *Larson,* this Court noted the importance of the "fresh start" when examining the "tool of the trade exemption."

Moreover, the purpose of the Bankruptcy Code and the Colorado exemption statutes are to provide a debtor with a "fresh start." The "fresh start" includes a discharge of debts and a means by which a debtor can continue on in a trade or profession—i.e., preservation of essential "stock in trade, supplies, fixtures, maps, machines, tools, equipment, books and business materials." *See, e.g., In re Keyworth,* 47 B.R. 966, 974 (D.Colo.1985).

260 B.R. at 188.