**In re Raymond Bill COOK, Theresa Ann Cook, Debtors.**

**Bankruptcy No. WF7–84–01812.**

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 6, 1985.

## FINDINGS OF FACT, CONCLUSION OF LAW AND ORDER AVOIDING LIEN IN PART

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Debtors Raymond Bill and Theresa Ann Cook, by Attorney Terrence J. Byrne, having filed an amended application for avoiding lien; and the Farmers Home Administration (FmHA), by Assistant United States Attorney Sheree L. Gowey, having objected; and a hearing having been held; and briefs having been submitted; the Court, being fully advised in the premises, FINDS THAT:

1. Debtors Theresa Ann and Raymond Bill Cook seek to avoid a Farmers Home Administration (FmHA) security interest in

certain items which, they assert, are for personal, family or household use, 11 U.S.C. sec. 522(f)(2)(A), or are tools of the Debtors' trade, *i.e.*, dairy farming, 11 U.S.C. sec. 522(f)(2)(B). Included in the Debtors' list are:

| | |
|---:|---|
| 8 | cows |
| 4 | acres of corn |
| 800 | bales of hay |
| 300 | bales of straw |
| 200 | bushels of oats |

claimed as exempt under Wis.Stats. sec. 815.18(6). (FmHA has not objected to the Debtors' exemption claim. *See* Fed.R. Bankr.P. 4003(b) (creditor must object within 30 days after first meeting of creditors has concluded).)

2. FmHA objects to the avoidance of its lien in cows and feed not required for household milk consumption. Mr. Cook testified that:

| | |
|---:|---|
| 2 | cows |
| 6–7 | acres of corn |
| 500 | bales of hay |
| 150 | bales of straw |
| 150–200 | bushels of oats |

are required to produce milk for his family for one year.

3. Mr. Cook testified that two additional cows a year were culled from his dairy herd for slaughter. While, as FmHA asserts, Mr. Cook may not have explicitly testified that the cows were slaughtered to provide meat for his family of six, the context of Mr. Cook's testimony makes it clear that he annually devotes four cows for personal, family or household use. *Cf. In re Thompson*, 750 F.2d 628, (8th Cir. 1984) (avoidance not permitted where there was no testimony to establish that pigs were not raised for sale).

4. The Debtor seeks to avoid the lien on the four remaining cows as tools of the trade of dairy farming.

5. The Bankruptcy Code does not provide a definition of tools of trade. The

accompanying reports do not discuss lien avoidance of tools of trade, but state that 11 U.S.C. sec. 522(f) "protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property", H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6318; S.Rep. No. 989, 95th Cong., 2nd Sess. 76 (1978) (under subsection (e)), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5862. Accordingly, the scope of 11 U.S.C. sec. 522(f)(2)(B) has been left to developing case law. *See* Annot., 55 A.L.R.Fed. 353 sec. 12 (cases collected).

6. *Functional Approach.* Some courts—this Court included—have defined tools of trade as those items of personal property which a debtor requires and uses to carry on a trade. *E.g., In re Pockat*, 6 B.R. 24, 25 (Bankr.W.D.Wis.1980) (over-the-road cab-tractor), *In re Nowak*, 43 B.R. 545, 547 (Bankr.W.D.Wis.1984) (salesman's automobile), *rev'd*, 48 B.R. 290 (W.D. Wis.1984) (discussed below), *Middleton v. Farmers State Bank*, 41 B.R. 953 (D.Minn. 1984) (farm machinery). *See generally* 3 L. King, *Collier on Bankruptcy* para 522.15 (15th ed. 1984) ("section 522(d)(6) is designed to help preserve the debtor's means of earning a living").

7. It is self-evident that a dairy farmer requires dairy cows to conduct a trade and earn a living. A dairy cow is not the product of the Debtors' trade; rather, it is the apparatus which the Debtors operate to produce their product.

8. *Textural Approach.* Some courts reason that section 522(f)(2)(B) tools of trade are those items which may be exempted as tools of trade under 11 U.S.C. sec. 522(d)(6), that section 522(d)(6) does not contain a list of specific items which are listed elsewhere in section 522(d) and that, accordingly, such items must have been purposefully excluded from clause 6.[1]

---

1. Section 522(d) provides, in pertinent part:
   (d) The following property may be exempted under subsection (b)(1) of this section:

   .   .   .   .   .

   (2) The debtor's interest, not to exceed $1,200 in value, in one motor vehicle.
   (3) The debtor's interest, not to exceed $200 in value in any particular item, in household

*E.g., In re Sweeney,* 7 B.R. 814, 818–819, 6 B.C.D. 1377, 1379–1380 (Bankr.E.D.Wis. 1980) (assorted items), *aff'd on other grounds sub nom. In re Gifford,* 688 F.2d 477, 9 B.C.D. 730 (7th Cir.1982) (en banc). Thus, it is possible to argue that the express reference to animals in section 522(d)(3) indicates that Congress did not intend to permit the exemption of any animal as a tool of trade under section 522(d)(6).[2] *In re Yoder,* 32 B.R. 777, 781 (Bankr.W.D.Pa.1983) (breeding stock).

■ 9. However, a careful examination of the text of section 522(d)(3) reveals that the word "animals" is used to *limit* the exemption for property held for household use[3]—the fact that the tool of trade exemption contains no limiting language demonstrates that Congress intended that it not be limited. The conclusion that animals used as tools of trade fall within section 522(d)(6) is bolstered by the absence of a separate and distinct federal exemption provision for farmers and ranchers. *Cf.* Wis.Stats. sec. 815.18(6) & (8) (exemption for livestock and farm implements is separate and distinct from exemption for tools of trade).

10. *Nowak Approach.* In *In re Nowak,* 48 B.R. 290 (W.D.Wis.1984), the District Court for the Western District of Wisconsin appears to take a practical approach: holding that a standard automobile is not a tool of trade within the meaning of 11 U.S.C. sec. 522(f)(2)(B), while citing, without comment, cases which permitted the avoidance of liens on an over-the-road cabtractor, a van with specialized equipment and large farm implements.

11. It is reasonable to assume that Congress did not contemplate the application of section 522 in an agricultural context. That the resulting problem of the classification of farm animals within section 522 admits no easy solution is no reason for this Court to avoid the task. *See Middleton,* Paragraph 6 *supra,* at 955 ("a narrow construction punishes the farmer for being inadvertently dependent on expensive tools of the trade").

12. Draft horses, which are held to facilitate farming operations, can be likened to machines; and beef cattle, which are held for fattening and sale, can be likened to raw materials and finished products; however, dairy cows, which are held for their ability to manufacture a distinct finished product from raw materials, can not be readily matched with a non-agricultural counterpart.[4]

■ 13. This Court is of the opinion that, as a practical matter, dairy cows are specialized tools of the trade of dairy farming. *Cf.* 34 Am.Jur.2d *Federal Taxation* para. 5515 (1984) (livestock held for dairy,

furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

The textural argument is most often made in the context of a motor vehicle. Since Congress explicitly and separately exempted motor vehicles at section 522(d)(2), the argument goes, its silence in section 522(d)(6) demonstrates an intention to not include motor vehicles as tools of trade. However, finding Congressional intent in silence is a game of mirrors—isn't it equally plausible that, "given the well-known rule that exemption statutes are to be liberally construed", *In re Sweeney,* Paragraph 8 *supra,* 7 B.R. at 819, 6 B.C.D. at 1380, Congress intended

to not exclude motor vehicles as tools of trade? *See* 73 Am.Jur.2d *Statutes,* sec. 212 (1974) ("The maxim 'expressio unius est exclusio alterius' ... requires great caution in its application." (footnote omitted)).

2. Many farmers and ranchers find that adverse terrain, unfavorable weather conditions or tight working conditions (*e.g.,* inside corrals) dictate the use of horses to carry on their trade. Carried to its logical extreme, the syllogism set forth in the text would require the conclusion that horses so used are not tools of trade.

3. In contrast, the phrase "motor vehicles" is used in section 522(d)(2) to *establish* a separate and distinct exemption for motor vehicles. *See* Footnote 1 *supra.*

4. The closest parallel might be to a moonshiner's still. More strained would be a comparison to a chemist's lab or, perhaps, an artisan's kiln.

breeding or draft purposes depreciable as property used in the taxpayer's trade or business).

### CONCLUSION OF LAW

The Debtors' application to avoid the FmHA lien should be granted except to the extent that the feed claimed as exempt exceeds the amount necessary to feed two cows for one year.

### ORDER

IT IS ORDERED THAT Raymond Bill and Theresa Ann Cook's application for avoiding of the lien of the Farmers Home Administration be, and the same hereby is, GRANTED except as to 300 bales of hay and 150 bales of straw.