**In re STEWART, Jerry Bob and Stewart, Cathy Denise, Debtors.**

**Bankruptcy No. 89–02758–7.**

United States Bankruptcy Court, D. Idaho.

Dec. 8, 1989.

Paula Brown Sinclair, Twin Falls, Idaho, for debtors.

L.D. Fitzgerald, trustee.

ALFRED C. HAGAN, Chief Judge.

The trustee in this Chapter 7 proceeding objects to the debtors' claimed exemption of three horses as tools of trade. This objection thus raises the issue of whether animals can be classified as tools of the debtors' trade.

Debtor Jerry Bob Stewart is employed as a yardman for Treasure Valley Livestock. He uses the horses in the pursuit of his employment duties. If he did not have his own horses to use at work, he would not be eligible for continued employment as a yardman. Under current Idaho exemption law, the tools of trade exemption is the only possible exemption available for the debtors to be able to keep the horses.

Different opinions as to the availability of the tools of the trade exemption have developed. In *Heape v. Citadell Bank of Independence,* 886 F.2d 280 (10th Cir.1989) the debtor sought to avoid a security interest in breeding livestock on the grounds his security interest impaired an exemption to which the debtors were entitled under state law. In that case, the Bankruptcy Court had held breeding livestock did not qualify as "a tool of the trade" under bankruptcy lien avoidance provision. The District Court affirmed, but the Court of Appeals reversed and remanded. The pertinent portion of the opinion follows:

Because the term "tools of the trade" is not defined by statute or legislative history, decisions among bankruptcy courts are inconsistent. Courts have based their analysis on such diverse rationale as the plain meaning of the word "tool," the value of the property in question, the interaction between the federal exemption and the lien avoidance statutes and the ratio of the property to the total capital assets of the debtor.... The [In re] *Bulger* [91 B.R. 129 (Bankr. M.D.Ala.1988)] court rejected all these tests in favor of the "use" test set forth in *Walkington v. PCA,* 42 B.R. 67 (Bankr.W.D.Mich.1984) ... This quote "use" test is compatible with Kansas exemption law. ...the Kansas Supreme Court accepted the "use" test when it defined "tools of the trade" as found in the Kansas exemption statute: "[4] tools and implements ... [to come within] the operation of the statute.... It is enough that they belong to the ... [debtor], that they are necessary and are personally used for the purpose of the carrying on his trade or business." (Citations omitted) ...

In quoting with favor the *Walkington* court analysis the court stated:

"It is the view of this court that Congress intended [Section 522(f)(2)(B)] to have a common sense interpretation on a

case by case basis with the key inquiry focusing on the necessity of an item to the individual debtor's particular business or employment ... while cattle are not generally considered a "tool" in common parlance, nevertheless "the description of a object as a 'tool' necessarily implies a classification based upon that objects functional and utilitarian purpose in the hands of its owner or user." ... Congress did not place any limit on the kinds of property that may constitute a 'tool' since to do so would unfairly discriminate against particular professions and undermine the fresh start policy the Code seeks to promote."

The case of *In re Cook*, 66 B.R. 3 (Bankr. W.D.Wis.1985) enumerated the various approaches to the tools of the trade analysis.

1. Functional approach—Courts have defined tools of the trade as those items of personal property which a debtor requires and uses to carry on a trade.

2. Textural approach—Some courts reason Section 522(f)(2)(B) list those items which may be exempted as tools of the trade under 11 U.S.C. § 522(d)(6), that Section 522(d)(6) does not contain a list of specific items which are listed elsewhere and that, accordingly, such items have been purposely excluded from the clause. Thus it is possible to argue the express reference to animals in Section 522(d)(3) indicates Congress did not intend to permit the exemption of any animal as a tool of the trade under Section 522(d)(6). The court pointed out under the textural approach carried to its logical extreme, the rational would not allow farmers and ranchers who utilize horses to exempt them as a tool of the trade.

3. A standard automobile is not a tool of the trade within the meaning of the section while citing, without comment, cases which permit avoidance of liens on a cab tractor, a specialty van, and large farm implements.

The case reviewed the text of Section 522(d)(3) suggested the word "animals" is used to limit the exemption for property held for household use and pointed out the fact the tool of the trade exemption contains no limiting language demonstrates that Congress intended it not be limited. This conclusion is bolstered by the absence of a separate and distant federal exemption provision for farmers and ranchers. The *Cook* decision specifically states draft horses, which are held to facilitate farming operations, can be likened to machines and are thus tools of the trade.

The majority of the cases cited herein deal with lien avoidance issues under Section 522(f), but the rational should be applicable to a state law exemption issue. There does not appear to be any Ninth Circuit or local case law dealing specifically with livestock and/or horses in the tool of the trade exemption.

It is my opinion the "use" test rational adopted by the Tenth Circuit does justice to the underlining congressional intent of allowing each debtor a fresh start. The "use" test allows the court to focus on a "classification of the object based upon that object's functional and utilitarian purpose in the hands of its owner or user." *In re Walkington*, 42 B.R. 67 (Bankr.W.D. Mich.), citing *In re Dubrock*, 5 B.R. 353 (Bankr.W.D.Ky.1980).

Thus, while the debtors in this instance will be afforded the use of the exemption such use is limited to the circumstances in which the debtors find themselves. These circumstances include the necessity for the use of the horses by Mr. Stewart's employer as an aid, or tool, for his labor. The horses are not in the category of a capital asset and do not produce economic returns by their sale or by the sale of their products or off-spring. The horses merely aid the debtors in performing their assigned tasks, and thus may be classified as tools of trade.

The exemption will be allowed by separate order.