**In re Lewis George PARROTTE and Ila Jean Parrotte, Debtors-in-Possession.**

**Bankruptcy No. 92–10108.**

United States Bankruptcy Court, D. Vermont.

Aug. 7, 1992.

G. Glinka, Glinka & Palmer, Cabot, Vt., for Lewis and Ila Parrotte (Parrottes).

D. Leahy, R.J. Obuchowski Law Office, Bethel, Vt., for Caledonia Nat. Bank (Caledonia).

### MEMORANDUM OF DECISION, ON 12 VT.STAT.ANN. § 2740(2)

FRANCIS G. CONRAD, Bankruptcy Judge.

We decide[1] here the novel question of statutory interpretation: whether cattle are "tools of the trade" within the meaning of 12 Vt.Stat.Ann. § 2740(2), and are therefore exempt from a debtor's estate. We hold that 12 Vt.Stat.Ann. § 2740(2) cannot be so interpreted.

By virtue of a security agreement and a UCC–1 financing statement, dated January 30, 1990, Caledonia obtained a purchase money security interest in all of Parrottes' farm personal property including, but not limited to, certain cattle and their products, proceeds, replacements, substitutions and additions.

On February 10, 1992, Parrottes sought protection under Chapter 12 of the Bankruptcy Code, 11 U.S.C. §§ 1201, *et seq.* In their schedules, Parrottes claimed three bulls valued at $1,050 as tools of the farmers' trade exempt under 12 Vt.Stat.Ann. § 2740(2). Caledonia, attempting to guard its collateral, objected to these exclusions asserting that a Vermont farmer in bankruptcy cannot exempt cattle as tools of the trade under § 2740(2).

---

**1.** Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(O). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.R. 7052.

■ Section 522(b) of the Bankruptcy Code permits an individual debtor in a bankruptcy case to choose between federal or state exemption systems. If a state "opts out" of the federal exemption system, however, a debtor may only pursue the exemption system provided by that debtor's state law. Vermont has not "opted out" of the federal exemption scheme, thus Parrottes may choose either the federal exemptions provided in § 522(d) or the exemptions available under Vermont state law. Parrottes have chosen exemptions provided by Vermont in 12 Vt.Stat.Ann. § 2740(2), which allows exemptions for "the debtor's interest, not to exceed $5,000 in aggregate value, in professional or trade books or tools of the profession or trade of the debtor or a dependent of the debtor."

In interpreting this statute, Parrottes would have us rely on several cases that have already determined that cattle are tools of a dairy farmer's trade. *In re Heape*, 886 F.2d 280 (10th Cir.1989); *In re Cook*, 66 B.R. 3 (Bkrtcy.W.D.Wis.1985); *In re Walkington*, 42 B.R. 67, 11 C.B.C.2d 276 (Bkrtcy.W.D.Mich.1984). Caledonia correctly points out, however, that these cases are from states having "tools of the trade" exemption statutes far broader than Vermont's, and are, therefore, of little relevance to us in interpreting Vermont's statute. The Kansas statute, for example, which the 10th Circuit in *In re Heape* construed as including breeding livestock as tools of the trade, provides for the following exemptions:

> (5) The books, documents, furniture, instruments, tools, implements, and equipment, *the breeding stock*, seed grain or growing plants stock, or other tangible means of production regularly or reasonably necessary in carrying on the person's profession, trade or business, or occupation, in an aggregate value not to exceed five thousand dollars.

Kan.Stat.Ann. § 60–2304. (emphasis ours). The Michigan statute that was interpreted in *In re Walkington* to include a herd of cattle as a tool of a dairy farmer's trade includes exemptions for:

> (5) The tools, implements, materials, stock apparatus, team, vehicle, motor vehicle, horses, harness, or other things to enable a person to carry on the profession, trade, occupation, or business, in which [the person] is principally engaged.

Mich.Comp.L. § 600.6023(5). Finally, the Wisconsin statute that the Court in *In re Cook* read to include cattle as a specialized tool of a farmer's trade specifically provides for the exemption of "{e}ight cows, ... one tractor not to exceed $1,500 in value...." Wis.Stat. §§ 815.18(6) & (8); *see also, In re Thompson*, 867 F.2d 416 (7th Cir.1989). The relevant statute here, 12 Vt.Stat.Ann. § 2740(2),[2] is far more narrow than any of the aforementioned statutes and, thus, cannot be compared to them to arrive at an accurate interpretation.

Essential to interpreting the Vermont "tools of the trade" statute is, however, whether we define "tool" literally or functionally. The Bankruptcy Court for the Western District of Kentucky has determined, in a way comparable to other jurisdictions, that "{t}he description of an object as a 'tool' necessarily implies a classification based upon that object's functional and utilitarian purpose in the hands of its owner or user." *In re Dubrock*, 5 B.R. 353, 355 (Bkrtcy.W.D.Ky.1980). Thus, some Courts have held that a motor vehicle may be a "tool of the trade" for a debtor who must use a motor vehicle in his or her profession. *See, e.g. In re Bulger*, 91 B.R. 129, 132 (M.D.Ala.1988) (truck for pulpwood hauler); *Dubrock, supra*, 5 B.R. at 354–356 (car for real estate broker).

As Parrottes argue, we too recently opined from the bench and adopted a functional definition of "tool" in holding that a pick-up truck was a tool of a plumber's trade in *In re Tuthill*, unpublished bench order and minute entry, Case No. 91–10473 (Bkrtcy.D.Vt., March 20, 1992). We must note, however, that in rendering our ruling in *Tuthill*, we made clear that our decision

2. Section 2740(2) exempts:
the debtor's interest, not to exceed $5,000.00 in aggregate value, in professional or trade books or tools of the profession or trade of the debtor or a dependent of the debtor.

could not be used as precedent in other cases, that it was made in the interest of equity, and that *Tuthill* would be limited expressly to its facts and circumstances. As a result, it can have no effect on the decision we make today.

■ Parrottes put forth a functional definition of a "tool" as "tangible personal property that is integral to and necessary for the debtor to earn income in the debtor's trade or profession." Were we to adopt this definition of "tool," we would run the risk of setting dangerous precedent. Under this definition, any business input, with the possible exception of raw materials, could arguably be a tool of the trade. This certainly could not be the intent of the Vermont legislature, and we will not impute such an intent.

As both parties concede, the Vermont statute closely mirrors, with the exception of the dollar amount allowed, § 522(d)(6) of the Bankruptcy Code, which exempts the "debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor." As a result, we find it appropriate to rely on *In The Matter of Patterson*, 825 F.2d 1140 (7th Cir.1987), a case deciding essentially the same issue but under § 522(d)(6) of the Bankruptcy Code, to determine whether cattle is contemplated within Vermont's "tools of the trade" exemption statute. To be sure, we recognize our duty to focus on the intent of the Vermont legislature in drafting 12 Vt.Stat. Ann. § 2740(2). Nevertheless, we conclude that the intent of the Vermont legislature in drafting 12 Vt.Stat.Ann. § 2740(2) cannot be measurably different than that of Congress in drafting § 522(d)(6) of the Bankruptcy Code.

The *Patterson* Court aptly pointed out that giving so broad an interpretation to the phrase "tools of the trade" in § 522(d)(6) makes it hard to explain the distinctive mention in that statute of so petty an item as professional or trade books. We find this argument equally persuasive with respect to 12 Vt.Stat.Ann. § 2740(2), for it too mentions professional

or trade books. Indeed, if the phrase "tools of the trade" was meant to be interpreted so broadly, the mention of professional or trade books would be redundant or superfluous, for professional books would easily be determined "tools of the trade."

Granted, the ceiling on 12 Vt.Stat.Ann. § 2740(2) is $5,000 as compared to the ceiling of $750 in § 522(d)(6) of the Code. Nonetheless, this does not require that "tools of the trade" be interpreted more broadly in 12 Vt.Stat.Ann. § 2740(2) than in § 522(d)(6) of the Code. It simply means that Vermont is more generous as to the amount that it permits debtors to exempt, not more liberal as to what it permits debtors to exempt.

We further conclude, as did the *Patterson* Court, that interpreting "tools of the trade" broadly is not consistent with the purpose of § 2740(2). The purpose of 12 Vt.Stat.Ann. § 2740(2) is to allow artisans to retain tools so that they are not forced out of their trade. For example, suppose we were to interpret § 2740(2) more broadly and allow a debtor to exempt a tractor. A tractor may have a value of $20,000 or more, and, thus, to exempt the maximum amount of $5,000, a debtor would have to sell the tractor or provide other assets and release to the estate's creditors that portion not exemptible. In our example, interpreting § 2740(2) broadly would not allow debtor's to retain more equipment or assets.

■ Moreover, the cattle in question were not simply implements or instruments for Parrottes in their dairy farm, they were the very essence of their dairy farming operation. To allow Parrottes to exempt their cattle would be no different than allowing, as the *Patterson* Court put it, an airline to exempt its airplanes. We find that a piece of equipment, or an animal as in this case, cannot be a tool of the trade if it approaches the very essence of a debtor's trade. The *Patterson* Court reached a similar conclusion, though through a different approach. The Seventh Circuit, in that case, distinguished between capital assets and tools of the trade by stating that capi-

tal assets could not be tools of the trade exempt from a debtor's estate. We made a similar distinction in a bench ruling in *In re Bushey*, later published at 1992 WL 78790, 1992 Bkrtcy. Lexis 444. We now abandon such a distinction because, upon further reflection, we no longer believe it is feasible. The term "capital asset" simply has too many meanings to a variety of professionals including economists, bankers, and accountants. Almost all tools, for example, would be classified as capital assets for tax purposes. *See, In re Heape, supra*, 886 F.2d at 284. Thus, to make a distinction between capital assets and tools of the trade would only serve to unleash a perhaps endless semantical debate as to the proper meaning of a capital asset. We need not add another layer of definition to § 2740(2).

Furthermore, in *Bushey*, we held that cattle are not tools of the trade under § 2740(2). The central reason put forth in that decision, and one we reiterate here, was that 12 Vt.Stat.Ann. § 2740(11) already makes specific reference to cattle for the purposes of exemption. Section 2740(11) provides for the following exemptions:

> (11) one cow, two goats, 10 sheep, 10 chickens, and feed sufficient to keep the cow, goats, sheep, or chicken through one winter;

To conclude that the Vermont legislature contemplated an exemption for cattle under § 2740(2) as well would be illogical, and under one of the sections, superfluous.

Just as compelling is the policy bolstering our decision today. Were we to allow Parrottes to exempt cattle formerly pledged as collateral for their loan, it would no doubt become harder for dairy farmers to secure such loans in the future. To be sure, if lenders do agree to give farmers loans with the knowledge that their collateral may be in danger of being wiped out by a broad reading of § 2740(2), they will only do so at higher interest rates. While this point does not entitle us to construe § 2740(2) narrowly, the fact that a broad construction will likely hurt, through higher interest rate loans, the very class target-

ed to benefit from this statute, provides us with a strong argument against construing the statute broadly, especially without evidence that the Vermont legislature desires us to do so. *See, In re Patterson, supra*, 825 F.2d at 1142 (7th Cir.1987).

Counsel for Caledonia is to settle an order.