In re Lewis George PARROTTE & Ila Jean Parrotte, Debtors.

Lewis George PARROTTE, Ila Jean Parrotte, Petitioners–Appellants,

v.

Jan M. SENSENICH, Trustee–Appellee.

No. 370, Docket 93–5026.

United States Court of Appeals, Second Circuit.

Submitted Oct. 8, 1993.

Decided April 20, 1994.

Gleb Glinka, Cabot, VT, for petitioners-appellants.

Jan M. Sensenich, White River Junction, VT, trustee-appellee, pro se.

Before: PIERCE, MINER and ALTIMARI, Circuit Judges.

PIERCE, Circuit Judge:

Lewis George and Ila Jean Parrotte (the "Parrottes") appeal from an order of the United States District Court for the District of Vermont (Franklin S. Billings, Jr., *Judge* ), which affirmed an order of the United States Bankruptcy Court, *In re Parrotte,* 143 B.R. 622 (Bankr.D.Vt.1992), disallowing the ex-

emption of three bulls from the property of their bankruptcy estate. The bankruptcy court held that the bulls were not "tools of the trade" within the meaning of Vermont's exemption statute, 12 V.S.A. § 2740(2) (Supp. 1992), and the district court affirmed that decision. We disagree with the district court's determination and conclude that, for a dairy farmer, breeding stock, like the bulls at issue here, fall within the definition of "tools of the trade" under 12 V.S.A. § 2740(2).

## BACKGROUND

On February 10, 1992, the Parrottes, who were Vermont dairy farmers, filed for bankruptcy protection under Chapter 12 of the United States Bankruptcy Code, 11 U.S.C. §§ 1201–1231 (1988). In connection with their proposed plan of reorganization, the Parrottes sought to exempt from their bankruptcy estate three bulls, valued together at $1,050.00, under Vermont's provision exempting tools of a debtor's trade. *See* 12 V.S.A. § 2740(2). Section 2740(2) of Title Twelve of the Vermont Statutes Annotated exempts from the bankruptcy estate

> the debtor's interest, not to exceed $5,000.00 in aggregate value, in professional or trade books or tools of the profession or trade of the debtor or a dependent of the debtor.

Caledonia National Bank of Danville,[1] which held an interest in the Parrottes' farm personal property, objected to the exemption claiming that bulls are not tools of a dairy farmers's trade within the meaning of the statute.

In an opinion filed August 7, 1992, the bankruptcy court sustained the bank's objection and held that the Vermont statute could not be interpreted so broadly as to include bulls, which "approach[ ] the very essence of a [dairy farmer's] trade." *In re Parrotte,* 143 B.R. at 624.

In a memorandum opinion and order filed February 24, 1993, the district court affirmed the decision of the bankruptcy court, stating its belief that the statute should not be interpreted broadly enough to "include farm

---

1. The Federal Deposit Insurance Corporation is currently the receiver of the First National Bank of Vermont, the successor-in-interest to Caledonia National Bank of Danville.

equipment and animals valued in excess of the statute's limit of $5,000," as "[t]his would not promote the statute's 'fresh start' policy since debtors would be required to sell equipment and livestock valued at more than the limit anyway." On March 26, 1993, the Parrottes filed a notice of appeal from the order of the district court.

## DISCUSSION

The Parrottes contend that the bankruptcy and district courts erred in holding that cattle do not come within the scope of Vermont's "tools of the trade" exemption. They argue that any item that is necessary to and used by the debtor in his or her trade is a "tool of the trade" within the meaning of the statute. In contrast, the appellee, who is the trustee of the Parrottes' bankruptcy estate, while disagreeing with much of the district and bankruptcy courts' reasoning, nevertheless urges us to affirm the decision of the district court on the ground that animals cannot be "tools of the trade" under § 2740(2). Since the question presented is a matter of statutory interpretation, we review the legal determinations of the district court *de novo. See In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 347–48 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992). The factual findings of the bankruptcy court will not be disturbed, however, unless clearly erroneous. *See In re Heape*, 886 F.2d 280, 282 (10th Cir.1989) (per curiam).

Federal bankruptcy law permits a debtor to exempt certain property from the bankruptcy estate. *See* 11 U.S.C. § 522(b) (1988). The debtor can elect to use either the federal exemption scheme outlined in 11 U.S.C. § 522(d), provided the debtor's home state has not opted out of the federal scheme, or the debtor may use an exemption scheme provided by state law. *See id.* The Parrottes elected to use the exemption scheme provided by Vermont law. *See* 12 V.S.A. § 2740.

The basic policy underlying Vermont's exemption of certain items from the bankruptcy estate is to promote a "fresh start" by allowing the debtor to keep property that the legislature deems essential to living and working. *See Leavitt v. Metcalf,* 2 Vt. 342, 343 (1829) (exemption statute "intended to prevent families from being stript of the last means of support, and left to suffer, or cast as a burden upon the public"). To effectuate this policy, Vermont courts have long held that exemption statutes are remedial in nature and "ought to receive a liberal construction in favor of the debtor." *Webster v. Orne,* 45 Vt. 40, 42 (1868) (citations omitted); *see also In re Rule,* 38 B.R. 37, 41 (Bankr.D.Vt.1983) ("[E]xemption provisions . . . should be liberally construed as they are remedial in nature.") (citation omitted); *Hooper v. Kennedy,* 100 Vt. 314, 316, 137 A. 194 (1927) (to carry out the beneficial purposes of the legislature, courts must give exemption statutes " 'the most liberal construction' ") (citation omitted).

The Vermont legislature enacted § 2740(2) in its present form in 1988, *see* Act of May 26, 1988, No. 233, § 1, 1988 Vt.Laws 310, 313, and since its enactment, the state courts of Vermont have not had occasion to interpret the statutory language. We find it helpful, therefore, to examine cases interpreting the federal bankruptcy statutes dealing with "tools of the trade," which have language similar to the language of the Vermont statute. For example, the federal "tools of the trade" exemption provides in pertinent part:

> (d) The following property may be exempted under subsection (b)(1) of this section:
>
> . . . .
>
> (6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

11 U.S.C. § 522(d)(6) (1988). Similarly, the federal lien avoidance provision allows a debtor to:

> avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> . . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

. . . .

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

11 U.S.C. § 522(f)(2)(B) (1988).

The district court approved the bankruptcy court's reliance on *In re Patterson*, 825 F.2d 1140 (7th Cir.1987), which narrowly construed the federal exemption statute, 11 U.S.C. § 522(d)(6), and held that cows could not be tools of a dairy farmer's trade. *Patterson*, 825 F.2d at 1142, 1147. The district court's principal concerns herein were that an overly broad interpretation of Vermont's "tools of the trade" exemption would impede the statute's "fresh start" policy and harm farmers as a group in their efforts to obtain credit. Without explicit reference, the court also affirmed the bankruptcy court's determinations that items which "approach[ ] the very essence of the debtor's trade" cannot be "tools of the trade," and that the specific reference to cattle in 12 V.S.A. § 2740(11) precludes a "tools of the trade" exemption for cattle. *In re Parrotte*, 143 B.R. at 624–25. We decline to adopt the holding of the Seventh Circuit in *Patterson*, which declared that capital assets could not be "tools of the trade." *See Patterson*, 825 F.2d at 1146. Even the bankruptcy court herein rejected that aspect of *Patterson*'s holding, recognizing that such a test would simply replace the task of defining a "tool of the trade" with the task of defining a capital asset. *See In re Parrotte*, 143 B.R. at 625.

■ In enacting the pertinent statute, the Vermont legislature did not undertake to define the term "tools of the trade," and in the absence of any indication that it intended to limit the type of property that can qualify as such, we will look to the function or use of the property to determine if it is, indeed, a tool of the debtor's trade. *See In re Cook*, 66 B.R. 3, 5 (Bankr.W.D.Wis.1985) (holding that dairy cows are "specialized tools" of a dairy farmer's trade and concluding that the absence of limiting language in the federal "tools of the trade" exemption demonstrates Congress' intent that it not be limited).

A number of other courts have adopted a functional approach to interpreting the "tools of the trade" exemption. *See, e.g., Heape*, 886 F.2d at 283 ("That breeding stock is composed of live animals does not change its essential function in the hands of the farmer."); *In re Bulger*, 91 B.R. 129, 131 (Bankr. M.D.Ala.1988) ("[I]t is the *use* of the property—not necessarily the size or shape—that determines whether it is a tool."); *In re Walkington*, 42 B.R. 67, 72 (Bankr. W.D.Mich.1984) ("[T]he description of an object as a 'tool' necessarily implies a classification based upon that object's functional and utilitarian purpose in the hands of its owner or user.") (citation and internal quotation marks omitted). The functional approach, which is also called the "use" test, is also compatible with the Vermont Supreme Court's historical approach to the exemption of tools and other items necessary to sustain life. *See, e.g., Rowell v. Powell*, 53 Vt. 302, 304–05 (1880) (colt is exempt under 1866 statute only if it is used or is intended to be used for team work); *Hooper*, 100 Vt. at 318, 137 A. 194 (disallowing exemption of a typewriter and desk because debtor failed to prove that the items "were used by [him] in carrying on or prosecuting his said business"). In fact, the bankruptcy court in the District of Vermont has previously applied a "use" test in determining that an automobile could be a "tool of the trade" under the federal lien avoidance provision. *See In re Rule*, 38 B.R. at 41 ("A motor vehicle may be a tool of the trade if it is necessary to and is used by the debtor to carry on his trade.").

The bankruptcy court's contention that an item that "approaches the very essence of a debtor's trade" cannot be a "tool of the trade," *In re Parrotte*, 143 B.R. at 624, is antithetical to the functional approach we endorse. Aside from the potential difficulty of determining what the "essence" of a particular trade may be, this formulation would exclude items that are actually used by the debtor as a necessary tool to carry on his or her trade. Unlike the bankruptcy court, we are not troubled by the possible exemption of large or expensive items, such as a farmer's tractor, when, as the bankruptcy court recognized, the legislature limited the exemption to "the *debtor's interest*, not to exceed

$5,000.00," in such tools. 12 V.S.A. § 2740(2) (emphasis added). We conclude that the language of 12 V.S.A. § 2740(2) dictates that we consider the function or use of the property in the debtor's trade, rather than its size or type, to determine whether it falls within the statutory language.

■ The Trustee of the Parrottes' bankruptcy estate urges us to draw a bright line between animals and inanimate objects for purposes of 12 V.S.A. § 2740(2) and to hold that, regardless of their use, animals cannot be tools of a debtor's trade. We find the Trustee's arguments unpersuasive. There is no contention that the bulls at issue here were not used by the Parrottes as necessary instruments in the ultimate process of producing milk for sale. Moreover, a number of other courts have already held that animals can be "tools of the trade." *See, e.g., Heape,* 886 F.2d at 281 (breeding stock); *In re Stewart,* 110 B.R. 11, 12 (Bankr.D.Idaho 1989) (horses); *In re Walkington,* 42 B.R. at 72 (cattle). We see no need to make a categorical distinction that precludes the inclusion of animals from the classification of "tools of the trade" when the animals are actually used by the debtor as instruments which are necessary to the process of carrying on the debtor's trade or profession. In our view, the bulls may be classified as tools of the Parrottes' trade.

■ Instructed by Vermont caselaw to interpret an exemption statute by using "the most liberal construction" in order to carry out the beneficial purposes of the legislature, *Hooper,* 100 Vt. at 316, 137 A. 194, we disagree with the bankruptcy court's assertion that Vermont's specific livestock exemption, 12 V.S.A. § 2740(11), precludes the use of the "tools of the trade" exemption for bulls. *See In re Parrotte,* 143 B.R. at 625. Section 2740(11) provides for the exemption of "one cow, two goats, 10 sheep, 10 chickens, and feed sufficient to keep the cow, goats, sheep or chickens through one winter." We understand the bankruptcy court to assert that the *specific* recognition given cows and livestock in § 2740(11) evinces "an intent by the Vermont Legislature not to include [them] in the category of Tools of the Trade." *In re Bushey,* No. 91–10754, 1992 WL 78790, at *1

(Bankr.D.Vt. Apr. 6, 1992). We fail to comprehend how this conclusion can be reconciled with the bankruptcy court's earlier conclusion that the existence of a *specific* automobile exemption does not preclude a motor vehicle from being classified as a "tool of the trade" under the *general* exemption provision. *See, e.g., In re Rule,* 38 B.R. at 41 ("a [motor vehicle] might be a tool of the trade to a service station owner or operator," despite the existence of a separate motor vehicle exemption). We see no manifest distinction between these two circumstances and we are unwilling to infer such a distinction.

In addition to the reasons articulated by the bankruptcy court, the district court offered two additional policy reasons for affirming the bankruptcy court's decision. First, the court expressed concern that the statute not be interpreted to include "equipment and animals valued in excess of the statute's limit of $5,000." The district judge concluded that such an interpretation would thwart the statute's "fresh start" policy. Second, the court opined that "allowing farmers to exempt livestock would result in higher interest rates." We believe that these considerations are within the purview of the legislature rather than the courts. The Vermont legislature, perhaps out of a concern similar to that expressed by the district court, chose to limit the *dollar value* of the property that can be exempted under § 2740(2), rather than the *kind* of property that can be exempted. The courts' inference that the provision was meant only to allow artisans to retain inexpensive tools necessary to carry on their trade is unsupported by the language or policy of the statute. As the district court in Vermont has previously acknowledged, narrowly interpreting the "tools of the trade" exemption "punishes the farmer for being inadvertently dependent on expensive tools of the trade as compared to other trades more dependent on smaller hand tools." *Oliver v. Lussier,* Civ. No. 85–228, slip op. at 4 (D.Vt. Dec. 6, 1985) (holding that farm equipment valued at over $15,000 was a tool of the debtors' trade, and thus, debtors could avoid a lien on the equipment under 11 U.S.C. § 522(f)(2)(B)) (citations and internal quotation marks omitted). We also believe

that the courts' prediction herein of adverse economic impact on farmers is somewhat speculative, and "even if there were some proof of it, the balance to be struck ... is one for the legislature, not the courts, to make." *In re Bellamy,* 962 F.2d 176, 186 (2d Cir.1992). We conclude, therefore, that the district court erred when it affirmed the bankruptcy court's determination that the Parrottes' three bulls were not "tools of the trade" under 12 V.S.A. § 2740(2).

## CONCLUSION

The decision of the district court is reversed and the matter is remanded for further proceedings consistent with this opinion.