**In re William L. CLIFFORD, Debtor.**

**Bankruptcy No. 97–24988.**

United States Bankruptcy Court,
D. Connecticut.

June 1, 1998.

George M. Purtill, Purtill, Purtill & Pfeffer, Glastonbury, CT, for debtor.

Edward C. Taiman, Jr., Chorches & Novak, P.C., Wethersfield, CT, for trustee.

**10**

*MEMORANDUM OF DECISION ON
OBJECTION TO EXEMPTIONS*

ROBERT L. KRECHEVSKY, Bankruptcy
Judge.

### I.

William L. Clifford ("the debtor") claims exemptions in two trucks, a crawler loader, and a fax machine as "tools of the trade," pursuant to § 522(b)(2) of the Bankruptcy Code[1] and § 52–352b(b) of the Connecticut General Statutes. Anthony S. Novak ("the trustee"), trustee of the debtor's estate, on January 27, 1998 filed an objection to these exemptions on the grounds that they are not permitted, or exceed the amounts permitted, under state law. The court heard the trustee's objections and the debtor's testimony on March 10, 1998, after which both parties submitted briefs.

### II.

*BACKGROUND*

The debtor is a licensed residential building contractor who builds and remodels homes. *Tr.* at 8–9. The debtor has been in the residential construction field since "approximately 1971 or 1972" and has done business as Clifford Contracting and Consulting, a sole proprietorship, "for eight or nine years." *Tr.* at 8. In his Chapter 7 petition, filed on November 19, 1997, the debtor elected the following Connecticut exemptions pursuant to § 52–352b(b):

| Property | Value Exempt |
|---|---|
| 1974 International Harvester 1700A Utility Truck | $ 1,750 |
| 1992 Chevy ½ Ton Silverado Truck | 5,225 |
| 1986 John Deere 555B Crawler Loader | 10,000 |
| Brother Fax Machine | 400 |

The debtor testified that he had purchased the International Harvester truck in 1995 to move building materials and lift trusses and large beams. *Tr.* at 14. Before purchasing the truck, he had accomplished the same tasks by hand but "not as efficiently and not as safely." *Id.* at 22. The Chevy Silverado pickup truck, purchased in 1992, was used to "get in touch with clients" and to bring workers, tools, and materials to his jobs. *Tr.* at 18, 20. The debtor claimed that it would be impossible for him to work as a building contractor without a pickup truck. *Tr.* at 20. The debtor used the crawler loader,[2] acquired in 1994, for excavation, demolition, clearing land, digging cellar holes, and other tasks. The debtor had previously hired people to perform these tasks and had purchased the crawler loader because he wanted to do the work himself "to have more control over that aspect of the job." *Tr.* at 9, 13. He further testified that owning the crawler loader allowed him to be "more competitive" in his building. *Tr.* at 14. The debtor had purchased the fax machine in 1996 "to be able to be competitive with bidding and keeping in touch with clients." *Tr.* at 17. He stated that he could not use the U.S. mail and the telephone and be competitive. *Tr.* at 28. As to all four items, the debtor testified that he used them to generate income for his business, that they were necessary, useful, and convenient for his trade, and that he depreciated them on his business tax return, insured them on his business insurance policy, and paid property taxes on them. *Tr.* at 11, 14–20.

### III.

*APPLICABLE LAW*

Connecticut's exemption statute provides, in pertinent part, that "[t]ools, books, instruments, farm animals and livestock feed, which are necessary to the exemptioner in the course of his or her occupation, profession or farming operation" shall be exempt. CONN.GEN.STAT.ANN. § 52–352b(b) (West 1991). The statute also exempts one motor vehicle, to the value of $1,500. *See id.* § 52–352b(j).

---

1. Section 522(b)(2) provides that a debtor may elect as exempt property "any property that is exempt under . . . State or local law." 11 U.S.C. § 522(b)(2).

2. A crawler loader is "a track machine that has a large bucket on the front and also a backhoe attachment on the back, so you can load and move materials and dig cellar holes, trenches" and perform excavation. *Tr.* at 10–11.

No recent decisions interpret Connecticut's tools of the trade exemption, and none address whether a motor vehicle may qualify as a tool of the trade. The few rulings available interpret the statute liberally. *See Patten v. Smith*, 4 Conn. 450, 454 (1823) ("In relation to the natural description of the goods, of which an exemption is demanded, the exposition of the law ... ought to be liberal; but so far as respects their protection, in a given case, on the ground that they are necessary for the upholding of life, this is a strict enquiry of *fact.*" (emphasis in original)). *See also Flaxman v. Capitol City Press*, 121 Conn. 423, 427, 185 A. 417 (1936) (noting that decisions subsequent to *Patten* have not "departed from the liberal rule of interpretation therein laid down.") *Montague v. Richardson*, 24 Conn. 338, 345–46 (1856) (holding, while interpreting a provision exempting "bedding and household furniture necessary for supporting life," that "necessary" does not mean "indispensable"). The Connecticut Supreme Court has held that the tools of the trade exemption may include modern and expensive tools and machinery such as a motor driven printing press. *See Flaxman v. Capitol City Press*, 121 Conn. at 428–29, 185 A. 417 ("In this day, when the application of motive power to the operation of what formerly were such distinctively hand tools as the egg beater in the home or hair clipper in the barber shop is a matter of common everyday practice, it cannot be held that propulsion by power per se excludes an implement from the exemption which the statute would otherwise afford. Such implements fall within the principle as to 'improved and more expensive tools' enunciated in *Seeley v. Gwillim* ...."); *Seeley v. Gwillim*, 40 Conn. 106, 110 (1873) (holding that the exemption covered "improved and more expensive tools" and "machinery [that] ... is comparatively of modern invention, and is often quite expensive, requiring in many cases considerable capital to carry on business successfully").

The Second Circuit in *In re Parrotte*, 22 F.3d 472 (2d Cir.1994), interpreting Vermont's undefined tools of the trade exemption,[3] for which no Vermont decisional law existed, stated that "in the absence of any indication that [the Vermont legislature] intended to limit the type of property that can qualify as [a tool of the trade], we will look to the function or use of the property to determine if it is, indeed, a tool of the debtor's trade." *Id.* at 475. The court held that the debtors, dairy farmers, could exempt three bulls as tools of their trade. *See id.* at 477. Guided by Vermont decisional law requiring a "liberal construction" of an exemption statute, the court rejected the bankruptcy court's assertion that Vermont's specific livestock exemption precluded use of the tools of the trade exemption for bulls. *Id.* at 476.

## IV.

### DISCUSSION

The trustee's Objection to Debtor's Claim of Exemptions asserts that the debtor's exemptions are not permitted, or exceed the amounts permitted, under state law. *Trustee's Obj.* at 2. The trustee, in his brief, argues that under Connecticut law, the tool of the trade exemption must be narrowly construed and that property is not exempt as a tool of the trade unless it is "indispensable" to the debtor's business as a builder. *Trustee's Br.* at 3–5. At the hearing, the trustee contended that motor vehicles cannot be exempt as tools of the trade because the statute includes a separate exemption for motor vehicles, and that the crawler loader is not a tool or an instrument but a piece of machinery. *Tr.* at 6.

The debtor asserts that under *Parrotte*, the court should look to how the property claimed as exempt is used in the debtor's trade to determine whether it is a tool, so long as Connecticut's statutory requirement that the tool be "necessary" is met. *Debtor's Post–Hearing Br.* at 7. The debtor also urges, pursuant to *Parrotte*, that the Connecticut Legislature did not limit the type, size, or value of the property that may be

---

**3.** Vermont's tools of the trade provision exempts "the debtor's interest, not to exceed $5,000.00 in aggregate value, in professional or trade books or tools of the profession or trade of the debtor or a dependent of the debtor." Vt.Stat.Ann. tit. 12, § 2740(2) (West, WESTLAW through 1997 Reg. Sess.).

exempted under § 52–352b(b), and that this court should not read such limitations into the statute. *Id.*

### A.

#### 1974 INTERNATIONAL HARVESTER 1700A UTILITY TRUCK

■ While courts disagree as to whether a motor vehicle can be exempt as a "tool of the trade," the general rule is that a motor vehicle is a tool of the trade if it is necessary and used by the debtor to carry on his business. It is not sufficient for the debtor to use a vehicle for transportation to and from work; use of the vehicle must be a part of the debtor's business. *See, e.g., Nazarene Fed. Credit Union v. McNutt (In re McNutt),* 87 B.R. 84, 87 (9th Cir. BAP 1988) (permitting the debtor, the sole proprietor of a drywall business, to exempt a pickup truck as a tool of his trade pursuant to Code § 522(d)(6), and adopting "what has been called the 'emerging rule' with respect to when a motor vehicle may be considered a tool of the trade: a motor vehicle is a tool of the trade if it is necessary to, and is used by the debtor to carry on his or her trade"); *In re Lyall,* 193 B.R. 767, 769 (Bankr.E.D.Va. 1996) (holding, under Virginia law, that a car used by an architect to attend meetings, visit clients and prospective clients, meet with governmental officials, visit project sites, and work with contractors as a subcontractor, was necessary to the debtor's profession and therefore exempt); *In re Barker,* 1995 WL 783222, at *2 (Bankr.N.D.Ohio 1995) (concluding, under Ohio law, that an automobile may qualify as a tool of the trade "if it is necessary to, and is used by, the debtor to carry on the debtor's trade"); *In re Weinstein,* 44 B.R. 987, 988 (Bankr.E.D.Pa.1984) (ruling that the debtor could avoid a creditor's lien on his car, pursuant to Code § 522(f)(2)(B), because the debtor's use of his car to contact his clients was necessary to carry out his duties as an insurance salesman, so that the vehicle was a tool of his trade); *Eagan v. Household Fin. Corp. (In re Eagan),* 16 B.R. 439, 441 (Bankr.N.D.N.Y. 1982) holding that a pickup truck, used by a farmer to tow equipment and transport cows, was exempt as a tool of the trade under Code § 522(d)(6). *See also* 4 LAWRENCE P. KING AT AL, COLLIER ON BANKRUPTCY ¶ 522.09[6] (15th ed. rev.1998); 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 46:16 (1997).

■ The debtor clearly uses the International Harvester truck in his trade to move and lift large and heavy materials. As to whether the truck is "necessary" to his occupation, the debtor testified that it allows him to accomplish certain tasks more quickly and safely than by hand. Because, under Connecticut law, the exemption statute and in particular the tools of the trade exemption are to be interpreted liberally, and because a tool need not be indispensable to be necessary, the court concludes that the International Harvester truck is exempt as a tool of the trade pursuant to § 52–352b(b). Although the trustee asserts that the statute's separate exemption for motor vehicles prevents the debtor from exempting his trucks as tools of the trade, the statute includes no such restriction, and the court may not create one. *See Barker,* 1995 WL 783222 at *2 (rejecting the argument that, because Ohio's exemption statute creates a separate exemption for automobiles, an automobile cannot qualify as exempt under a different provision of the statute, because "[c]ertainly, had that been its intent, the legislature has the power to expressly so provide."); *In re Rule,* 38 B.R. 37, 41 (Bankr.D.Vt.1983) ("The fact that there is an automobile exemption separate from the tool of the trade exemption does not automatically preclude a motor vehicle from being a tool of the trade.").

### B.

#### 1992 CHEVY ½ TON SILVERADO TRUCK

■ The debtor uses his pickup truck to maintain contact with clients and transport workers, tools, and materials to job sites and, by his own testimony, could not work as a contractor without such a truck. Courts have generally considered a debtor's vehicle necessary to his or her trade where the debtor carries on a business that requires frequent visits to and regular work at client locations. *See McNutt,* 87 B.R. at 87; *Lyall,* 193 B.R. at 769; *Weinstein,* 44 B.R. at 988.

The court concludes that the Chevy Silverado truck is exempt pursuant to § 52–352b(b).

## C.

### 1986 JOHN DEERE 555B CRAWLER LOADER

The Connecticut Supreme Court, in *Patten* and *Flaxman,* held that machinery could be exempt as a tool of the trade. Other courts have held that machines may be exempt under a tool of the trade provision. *See, e.g., Prod. Credit Assoc. of St. Cloud v. LaFond (In re LaFond),* 791 F.2d 623, 626 (8th Cir.1986) (rejecting the contention that large items of farm equipment may not be considered tools of the trade under Code § 522(f)(2)(B) and noting that several bankruptcy and district courts had ruled similarly); *In re Challinor,* 79 B.R. 19, 21 (Bankr. D.Mont.1987) (finding that, under Montana law, a contractor who cleared timber could claim an exemption in a "D7–F Cat" as a tool of his trade); *In re Frierson,* 15 B.R. 157, 158–59 (Bankr.D.Kan.1981) (exempting, under Kansas law, two trucks, a car, a bobcat, an asphalt roller, an air compressor, and a concrete saw because they were reasonably necessary in the debtors' asphalt and concrete business).

The debtor uses the crawler loader in his business to perform excavation and similar tasks which, if performed by hand, would reduce the debtor's competitiveness in his occupation. Although the crawler loader is an expensive item of equipment, Connecticut's exemption statute contains no dollar limit for "tools of the trade." The court concludes that the debtor's John Deere 555B crawler loader is exempt under § 52–352b(b).

## D.

### BROTHER FAX MACHINE

Only two published decisions address whether a fax machine may be exempt as a tool of the trade. In *In re King,* 153 B.R. 229 (Bankr.N.D.Ill.1993), the court, applying Illinois law, allowed the debtor, whose occupation was unspecified, to exempt a fax machine and other office equipment and furnishings as tools of his trade. *Id.* at 230. The court in *In re Swift,* 124 B.R. 475 (Bankr. W.D.Tex.1991), in contrast, did not permit a debtor insurance agent to exempt a fax machine and other office equipment because it "merely [had] a general value that [was] not require to the debtor's business," and Texas law restricted the exemption to items "peculiarly adapted to a trade or business." *Id.* at 480–81.

Under Connecticut law, the tools of the trade exemption includes machinery and "improved and expensive tools." Other cases similarly suggest that exemption statutes should be construed in accordance with modern technology. *See In re Barker,* 1995 WL 783222 at *2 (Bankr.N.D.Ohio 1995) ("An exemption statute must be flexible and capable of changing and adapting with changing technology and changing uses.... What is considered to be a tool of a given trade today may not have been so viewed twenty years ago and may not be so viewed twenty years in the future."); *Schneider v. Fidelity Nat'l Bank (In re Schneider),* 37 B.R. 747, 751 (Bankr.N.D.Ga.1984) ("We must recognize that trades and uses of implements may change and evolve, and prior definitions and concepts must be revised to be consistent with technological or trade changes and uses.").

The debtor uses the fax machine to remain competitive in his occupation. Connecticut's exemption statute, unlike Texas', does not require exempt items to be specially adapted to the debtor's business so long as they are necessary. The court considers a fax machine to be necessary to the debtor's occupation, and concludes that the fax machine is exempt under § 52–352b(b).

## VI.

In conclusion, the court finds the above-mentioned items to be exempt pursuant to Conn.Gen.Stat. § 52–352b(b). The trustee's concern over the absence of dollar limits in Connecticut's tools of the trade exemption, unlike the corresponding exemption in many other state statutes and in the federal exemption statute, should be addressed to the state legislature. *See Rainier Equipment Finance, Inc. v. Taylor (In re Taylor),* 861 F.2d 550, 551, 553 (9th Cir.1988) (holding

that a logging contractor could exempt a logging truck and trailer valued at approximately $50,000 under Montana's tools of the trade exemption, which included no dollar limit, because, quoting *MacDonald v. Mercill*, 220 Mont. 146, 714 P.2d 132 (1986), " 'absent guidance by the legislature it would be improper for this Court to place a dollar value ceiling on the relevant exempt property' "). The trustee's objection to the debtor's exemptions is denied.

It is SO ORDERED.